## Rabold v. Gonyer.

Jan. 24, 1941.

Jouett & Metcalf for appellant.

Marshall McCann and D. L. Pendleton for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Reversing.

This action was filed by the appellant, Ruth Fuller Rabold, against the appellee, Edward A. Gonyer, to recover for personal injuries and car damage alleged to have been sustained in a collision between appellant's car and the car of appellee, driven by his 17-year old son, James Gonyer. Appellee counterclaimed for damages to his car and the jury returned a verdict for him on the counterclaim in the sum of $275. On this appeal from the judgment entered on that verdict numerous errors are assigned but the main ground relied on for a reversal is that error was committed in refusing to direct a verdict for appellant. We will consider this ground first and, in doing so, we may say that we are not concerned with the family purpose doctrine since it was stipulated that the circumstances were such as to bring the case within the application of that doctrine.

Appellant and a lady guest were in appellant's car, driven by appellant's husband, Earl Rabold; the car was entering Winchester from the direction of Lexington, traveling eastwardly on Lexington Avenue, which is 33 feet in width. Appellee's car, driven by his son, with three children on the front seat and four in the rear, was traveling westwardly on Lexington Avenue on a downhill slope which extended back from 250 to 300 or more feet east of the point of collision, which occurred in front of a grocery store on the south side of Lexington Avenue on the west corner of Hayes Street and Lexington Avenue. Hayes Street enters into Lexington Avenue from the south but does not extend beyond the intersection—a T intersection. Approximately 100 feet east of Hayes Street A Street enters Lexington Avenue from the north, another T intersection, so that the east side of A Street is approximately 150 feet from the point of collision.

Evidence for the appellant is rather persuasive that her car was traveling approximately 25 miles per hour at the time of collision but several witnesses testified for appellee that this speed was from 40 to 50 miles

per hour. In considering the question of a directed verdict we, of course, accept the latter as the true rate of speed.

The evidence establishes conclusively that the collision occurred south of the center line of Lexington Avenue and that appellant's car was continuously south of the center line (on its right side) from the time it crossed the railroad tracks several hundred feet west of the point of collision. James Gonyer, appellee's driver, admits that his fender was approximately a foot south of the center line at the time of collision while appellant's evidence is to the effect that the collision occurred four or five feet to the south of the center line. Appellant's evidence is that James Gonyer was driving 50 miles per hour while appellee's evidence placed this speed at 25 to 30 miles per hour, which latter speed we also accept as correct in considering this question.

Considering only the evidence detailed up to this point, a situation is presented in which the driver of appellee's car was guilty of such a violation of duty (being on the wrong side of the street) as to impose liability on appellee unless appellant's driver was guilty of contributory negligence. Knecht v. Buckshorn, 233 Ky. 329, 25 S. W. (2d) 727; Thornton v. Phillips, 262 Ky. 346, 90 S. W. (2d) 347, 349.

While the trial court instructed the jury as to numerous duties imposed on the driver of appellant's car, there was not the remotest shadow of evidence that he violated any duty required of him or any statutory regulation except as to speed. Did the speed at which appellant's husband was driving, 40 to 50 miles per hour, contribute to cause the collision to such an extent that it would not otherwise have occurred? The evidence clearly discloses that it did not and we are of the opinion that the trial court should have so ruled as a matter of law. The evidence shows conclusively that James Gonyer suddenly turned his car to the left and south of the center line to avoid striking a boy crossing the street and that he would have collided with appellant's car regardless of its speed. The evidence entirely failed to show any opportunity on the part of Rabold to avoid the collision or any failure on his part to perform a required duty. The speed at which he was driving was a mere incident having no causal or contributing connection with the accident. In Thronton v. Phillips,

supra, in which the car of appellee was struck by a truck driven on the wrong side of the road, we said:

"The rate of speed at which she was traveling, in the circumstances, was wholly immaterial, for, if she were moving at a rapid rate of speed, slowly, or had come to a full stop with the truck on her side of the road, as to her, the collision was inescapable. His truck having created an emergency, he cannot be permitted to cast the responsibility therefor upon Mrs. Phillips, nor is he in a position to charge her with contributory negligence."

That line of reasoning is peculiarly applicable here. The collision occurred because appellee's car was on the wrong side of the street. It occurred suddenly, with no opportunity on Rabold's part to avert it, and appellee is not in position to cast responsibility upon appellant's driver or charge him with contributory negligence. It seems clear to us that the evidence showed no violation of duty on Rabold's part as the proximate or contributing cause of the collision.

We are next faced with determining whether the evidence was sufficient to submit to the jury the question whether James Gonyer, driving appellee's car, was confronted by an emergency justifying him in suddenly turning to the wrong side of the street, thereby colliding with appellant's car.

James Gonyer testified that when he reached the summit of the hill 232 feet east of the collision point, and while driving 25 to 30 miles per hour he saw a boy, Willard Scott, standing on the south side of the street in front of the grocery store on the west corner of Hayes Street and that he also then saw appellant's car on the west side of the railroad tracks; that he continued his same speed and saw the boy start to cross the street and proceed to the middle of the street and stop; that when he got to A Street (approximately 150 feet from the boy) he blew his horn and stopped and then thought the boy had seen him; that he then started on and the boy, instead of standing still, walked on across in front of his car; that he then set his brakes and blew his horn and, as he expressed it, "by that time I was on top of him and to keep from hitting him I turned to the left." The collision then occurred and Rabold lost control of his car, which ran diagonally across the

street and came to rest against a house on the east corner of A Street, about 160 feet away. The Gonyer car was turned almost completely around but remained near the collision point with the front of the car south of the center line.

On the strength of this evidence, which was corroborated by other witnesses, the jury, in addition to the other instructions, were instructed in substance to find for the defendant if the Scott boy suddenly ran so close in front of the Gonyer car that James Gonyer could not avoid striking him except by turning his car south of the center line but were further instructed that if the emergency was created or contributed to by James Gonyer's negligence they should not find for the defendant on this ground.

The form of the instruction is not criticized, the complaint being that the evidence showed as a matter of law that James Gonyer was guilty of negligence which created the emergency. The instruction given correctly presented in the abstract the sudden emergency rule by limiting its application to an emergency not created or contributed to by the driver's own negligence—a driver may not by his own negligence create an emergency and then be excused from liability for damage caused by his actions in seeking to avoid the emergency. Robinson Transfer Co. v. Turner, 244 Ky. 181, 50 S. W. (2d) 546; Adams v. Parish, 189 Ky. 628, 225 S. W. 467.

But, while the instruction correctly presented the law in the abstract, it is clear to us that the evidence disclosed as a matter of law that the emergency relied on to justify James Gonyer in driving to the wrong side of the street and colliding with appellant's car was an emergency created by his own negligence. From a distance of at least 232 feet (348 feet according to appellant's testimony) he saw the boy standing on the sidewalk and saw him start across the street and when at A Street, 150 feet away, he saw the boy standing in the middle of the street. He then knew the boy was in a position of peril and was bound to anticipate that he might proceed further across the street. When from a distance of 150 feet he saw the boy standing in the middle of the street he was, at least from that time, under the duty so to operate his car as not to endanger the boy and so as not to endanger other persons or traf-

fic by reason of any course of action he might have to adopt to avoid striking the boy. This duty he did not observe but drove at such a rate of speed or with his car so out of control or in such disregard of the position of danger he knew the boy to be in that when the boy proceeded across the street, an action naturally to be anticipated, he was compelled to swerve to the wrong side of the street to avoid striking him—in short, he failed to use ordinary care in handling his car and by his own negligence created an emergency upon which he seeks to rely to absolve himself from the natural consequences of his act. This he may not do.

Since the collision was caused by appellee's car being on the wrong side of the street under circumstances which did not justify it being there, and since the driver of appellant's car was not guilty of contributory negligence, the jury should have been directed to find a verdict for appellant for damage to her car—the evidence disclosed conclusively that the car was damaged—and to find for appellant for personal injuries if they believed from the evidence she was injured; the evidence was such as to make an issue for the jury as to whether appellant was injured.

We are aware that it is seldom that we have held that the plaintiff in a damage suit of this character was entitled to a directed verdict, especially where there was a verdict for the defendant on a counterclaim, but we may not permit a scarcity of precedent to deter us from so holding where it clearly appears that the evidence shows conclusively that a defendant's negligence was the sole and only cause of the collision. We regard the verdict of the jury which serves to accentuate the unusual nature of our holding, as a flagrant instance of a verdict returned as a result of passion and prejudice.

Another error complained of is that in the instruction as to the duties imposed on the driver of appellant's car there was included an instruction as to the duty to give warning if the jury believed warning necessary under the circumstances. Even though there had been a properly submittable issue for the jury, there was certainly no place for this instruction since both cars were in plain view of each other from the time each was several hundred feet from the point of collision and James Gonyer testified he saw the Rabold car 300 feet

west of the point of collision and knew it was approaching. The purpose of a warning signal is to give notice of the approach of a car—obviously there is no duty to signal the approach of a car to one who already knows it is approaching. Mayer v. Louisville Railway Co., 192 Ky. 371, 233 S. W. 785; Field v. Collins, 263 Ky. 474, 92 S. W. (2d) 793.

It is further contended for appellant that even if the evidence justified instructions as to the duties of her driver, nevertheless her liability on the counterclaim should have been predicated on the negligence of her driver being the proximate cause of the collision. This was not done but, on the contrary, the jury were instructed that they might render a verdict on the counterclaim if negligence of appellant's driver "caused or helped to cause" the collision. This was error for, while it is not essential that the words "proximate cause" should be used, negligence to support a verdict for damages on a counterclaim against a single plaintiff must be more than a contributing cause of the collision—mere contributory negligence serves to defeat the plaintiff's right to damages but is not sufficient to authorize a recovery against the plaintiff on a counterclaim. The instruction given permitted a recovery for mere contributory negligence by use of the words "or helped to cause." Those words should have been omitted.

For the reasons given the judgment is reversed with directions to grant the appellant a new trial and for further proceedings consistent with this opinion.

Judge Thomas did not participate in the decision of this case.