**Bybee Bros., Inc., v. Imes.**

**Same v. Shallberg.**

Oct. 21, 1941.

2

Finley F. Gibson, Jr., for appellant.

Stanley B. Mayer for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The appellees, Mary Imes and Marilyn Carol Shallberg, brought their respective actions in the Jefferson Circuit Court against the appellant, a corporation, to recover damages for personal injuries sustained by them as the result of a collision between the automobile in which they were riding and a truck owned by appellant and operated by its driver, George Pfiester. Appellees (plaintiffs below) alleged in their respective petitions, in substance, that on or about April 14, 1938, they were driving in a northwesterly direction on the Newburg Road in Jefferson County and when their automobile reached a point near the intersection of Newburg Road and Trevilian Way the motor truck of the defendant collided with the automobile being driven by plaintiff Mary Imes, and made further allegations of negligence on the part of the driver of the truck and that the collision was caused by the negligence of the driver of the truck. They further set out the nature of their injuries, hospital bills, etc., and damage to the automobile in which they were riding which was owned by the plaintiff Mary Imes. By subsequent pleadings the issues were made and by agreement of the parties the two actions were tried together before the same jury and resulted in verdicts and judgments thereon in the sum of $3,070.50 in favor of Mary Imes, and $1,160.50 in favor of Marilyn Carol Shallberg, and to reverse those judgments these appeals are prosecuted jointly. The grounds relied on and discussed in brief of appellant for reversal are (a) the court erred in admitting incompetent evidence in behalf of plaintiffs, (b) the court erred in refusing to give certain instructions offered by defendant, and (c) the instructions given were erroneous.

Since a review of the evidence becomes necessary in determining the questions raised concerning the instructions, as well as the alleged incompetent evidence, we will first review the evidence.

The plaintiff Mary Imes testified that on the day of the accident she and her daughter, Marilyn Carol Shallberg, co-plaintiff on the trial, left their home at 1804 Trevilian Way on their way to town (Louisville) and after reaching Trevilian Way which intersected Newburg Road, and after she turned toward town on the Newburg road which was out of the corporate limits of the city, she saw defendant's truck turn a corner and it

appeared that the driver had lost control of it and it was "zigzagging" along the road, and said: "So I pulled to the side of the road so it wouldn't hit me, and it just came down and hit me anyway." She said that she had gotten slightly off the road and had stopped at the time the truck collided with her car, striking it in the front, or what is known as a head-on collision. She said that when she first saw the truck coming she was driving at a speed of about thirty miles an hour and she estimated that the truck was running sixty miles an hour. She further said that there were some boys on bicycles in front of the truck and traveling in the same direction that the truck was going, or approaching her in the opposite direction, and that the boys were about twenty feet from her but by the time the cars collided the boys had gone on past her. She said the boys were riding in a straight line "or staying on their side," meaning they were traveling on their right side of the road in front of the truck which was the extreme left of the road from Mrs. Imes. It appears that when the truck approached the boys who were in front of it the driver applied the brakes and the truck skidded. In describing the skidding of the truck Mrs. Imes said that it skidded "terribly" and she did not think it would hit her so hard because it had skidded so far. She said that she was not a judge of distances and for that reason she did not estimate or undertake to say how many feet or yards the truck skidded but only said it was "quite a distance." She said that when the truck struck her car her right wheels were off the hard surface of the road and the left wheels a little on the hard surface. The witness then described the injuries she received, the treatment, hospital bills, etc., but since the amount of the verdicts is not questioned as being excessive we will confine our review of the evidence to the cause of the collision.

The next witness, plaintiff Marilyn Carol Shallberg, was asked to tell the jury what she saw and what she knew about the accident, and she answered:

"Well, I saw this truck coming around the curve. It was coming so very fast, and we didn't know what to do. It was going back and forth, both sides of the road—we didn't know where it was going—and Mother pulled the two right wheels off of the road, to try to get out of his way.

"Q. Then what happened? A. Then he ran into us.

"Q. Was your machine moving or standing still at that time? A. We were standing still."

The witness further said that the truck hit their car with great force and the truck was going "as fast as he could go—60 miles an hour."

F. R. Stark, a police officer or county patrolman of Jefferson County, was called as a witness on behalf of plaintiff. He testified that he was called to the scene of the accident sometime in the early afternoon, perhaps around one o'clock. He testified as follows:

"Q. What did you find there on the road? A. This Bybee truck was going southeast on New-burg Road, and the Studebaker was going north-west, and the Studebaker had got over on that side of the road (indicating) as far as it could get without going into the ditch, and this truck, the skid-marks showed, was coming out the Poplar Level Road, and the truck cut over on her side of the road and they had a collision.

"Q. When you say Poplar Level Road—A. I mean the Newburg Road.

"Q. Did you see skidmarks there, Officer? A. Yes, sir.

"Q. Did you measure them? A. I think they was around 213 feet, or something over 200 feet, of skidmarks there.

"Q. Now, did those skidmarks run from the truck's right side of the road to the left side, or not? A. Yes, they run from the truck driver's right side of the road over to the left side.

"Q. And right down to the place— A. Where the collision took place. And then, after he hit this Studebaker, his car swerved over off the road and hit head-on this way, and the back end of the truck jumped around.

"Q. Did this accident happen on the Stude-baker's side of the road or on the truck's side of the road? A. On the Studebaker's side of the road."

Later the witness explained that he did not see the

collision and that his description of the maneuvers of the cars was based on the skid marks that he found and the positions of the two vehicles. The witness further said that there was a ditch near the road and that plaintiffs' car had got over as far as it could without getting into the ditch. He said that it was a dry day and the surface of the road was dry.

It is argued for appellant that the witness Stark's testimony concerning skid marks which he observed on the road was incompetent because the witness was unable to identify the marks as being made by the defendant's truck, and to sustain his position the case of Appalachian Stave Co. v. Pickard, 266 Ky. 565, 99 S. W. (2d) 472, is cited and relied on. It was held in that case that testimony of witnesses concerning tire tracks which were pointed out to them at the scene of the accident on the following day by the occupant of the plaintiff's automobile was inadmissible as hearsay. In the case at bar we have a different situation. The witness arrived at the scene of the accident within a few minutes after it occurred and saw the skid marks that ran from the truck's right side of the road to the left side ''and ran down to the place—where the collision took place.'' Furthermore, as will later appear in our review of the evidence of George Pfiester, the truck driver, he admitted that he applied the brakes when he started from his side of the road to the left side, and when asked if he made skid marks he said he would not call it skid marks but that he left ''a black streak where I cut across the highway.'' This, of course, was only a different name for the marks called ''skid marks'' testified to by the witness Stark. In the circumstances we think the evidence of Stark was competent. But, if it had been incompetent it is now too late for appellant to complain since there were no objections made thereto.

The next alleged incompetent evidence complained of is concerning a photograph which the same witness, Stark, testified to in rebuttal. He testified that the photograph referred to showed skid marks and that there was a piece of paper attached to the back of the photograph showing how many feet the truck skidded. The objection offered to this evidence is that the witness did not produce the photograph with the attached memorandum thereto showing the skid marks. However, the witness said that the photograph with the attached

paper was placed in an envelope with other photographs and was made a part of the report of the accident, but at the trial of the case that particular photograph was absent from the envelope. Conceding without deciding that such evidence standing alone would have been incompetent, yet, since the same witness testified in chief that he stepped the distance of the skid marks which showed the truck had skidded 213 feet, the evidence in rebuttal was merely cumulative of other evidence. We do not think defendant's substantial rights were prejudiced by the evidence complained of.

This brings us to consideration of the instructions. The theory of appellant's defense is that the driver of the truck was confronted with an emergency because of the boys in front of him on the bicycles and he was faced with the alternative of striking the boys or cutting to his left side of the road which resulted in the collision. Defendant offered an instruction on emergency but the court refused to give it. It is the rule that a person is not entitled to an instruction on emergency if he brought about the emergency himself, and we presume that the court refused to give the emergency instruction upon the theory that the driver of the truck brought about the emergency by his own negligence. Pfiester, the driver of the truck, testified that he saw the boys on the bicycles when he was 300 yards or 900 feet from them and when he was within 200 feet of them he blew his horn but the boys did not get off the road. He admitted that he was running 40 or 45 miles an hour when he first saw the boys but said that he slowed down to about 25 or 30 miles an hour when he approached them and when he was within about 50 feet of them they were still holding the road in front of him or "scattering out" on the road and he was too near them to stop and then applied his brakes and cut across the road and because of the approach of plaintiff's car he endeavored to get across to the left side and out of it to avoid colliding with plaintiff's car, and that at about the same time plaintiff ran out of the road and the cars collided. He was asked and answered this question:

"Q. And you drove up to within 50 feet of these boys on bicycles, and you couldn't stop within 80 feet? A. That is correct. At the time that I was within a distance of 150 feet of the boys there wasn't any reason to stop. As I got closer to them

they obstructed the highway, and when it come time to stop I couldn't."

According to the evidence of the driver of the truck he discovered the boys on the bicycles when he was 900 feet behind them and was running at a speed of 40 or 45 miles an hour and did not undertake to get the truck under control until he was within 50 feet of the boys, which he says was too near them to stop the truck and he applied his brakes and cut across the road and skidded 80 feet. There is an abundance of evidence of other witnesses that the truck skidded more than 200 feet. It is common knowledge that a motor vehicle running at 25 or 30 miles an hour on a dry road would not skid the distance the evidence shows the truck in question skidded after the brakes were applied. The road was a main thoroughfare just outside the populous city of Louisville and any motorist using the road is charged with knowledge that traffic might appear from the opposite direction at any time.

It was the duty of the driver of the truck, when he saw the boys on the bicycles several hundred feet ahead of him, to have his truck under control and operate it at a rate of speed that would enable him to stop it when approaching the boys if necessary rather than take chances on holding a high rate of speed and assuming that if the boys did not yield the road to him he could go around them by taking the other side of the road. In Rabold v. Gonyer, 285 Ky. 618, 148 S. W. (2d) 728, 731, the defendant Gonyer testified that when he reached the summit of the hill 232 feet east of the collision point, and while driving 25 to 30 miles per hour he saw a boy, Willard Scott, standing on the south side of the street in front of the grocery store on the west corner of Hayes Street and that he also then saw appellant's car on the west side of the railroad tracks; that he continued his same speed and saw the boy start to cross the street and proceed to the middle of the street and stop; that when he got to A Street (approximately 150 feet from the boy) he blew his horn and stopped and then thought the boy had seen him; that he then started on and the boy, instead of standing still, walked on across in front of his car; that he then set his brakes and blew his horn and, as he expressed it, "by that time I was on top of him and to keep from hitting him I turned to the left." The collision then occurred and Rabold lost control of his

car, which ran diagonally across the street and came to rest against a house on the east corner of A Street, about 160 feet away. The court gave an emergency instruction on the strength of the evidence of Gonyer but on appeal we held that Gonyer brought about the emergency by his own negligence and he was not entitled to an emergency instruction. We said:

"But, while the instruction correctly presented the law in the abstract, it is clear to us that the evidence disclosed as a matter of law that the emergency relied on to justify James Gonyer in driving to the wrong side of the street and colliding with appellant's car was an emergency created by his own negligence. From a distance of at least 232 feet (348 feet according to appellant's testimony,) he saw the boy standing on the sidewalk and saw him start across the street and when at A Street, 150 feet away, he saw the boy standing in the middle of the street. He then knew the boy was in a position of peril and was bound to anticipate that he might proceed further across the street. When from a distance of 150 feet he saw the boy standing in the middle of the street he was, at least from that time, under the duty so to operate his car as not to endanger the boy and so as not to endanger other persons or traffic by reason of any course of action he might have to adopt to avoid striking the boy. This duty he did not observe but drove at such a rate of speed or with his car so out of control or in such disregard of the position of danger he knew the boy to be in that when the boy proceeded across the street, an action naturally to be anticipated, he was compelled to swerve to the wrong side of the street to avoid striking him—in short, he failed to use ordinary care in handling his car and by his own negligence created an emergency upon which he seeks to rely to absolve himself from the natural consequences of his act. This he may not do."

We think the case, supra, presented a state of facts as favorable or indeed more favorable to the defendant on the question of emergency than the evidence in the present case. We conclude, therefore, that the defendant was not entitled to the instruction offered on emergency and the court did not err in refusing to give the same.

The defendant also offered an instruction on sudden appearance of the boys on the bicycles, to the effect that if the jury believed that if the boys suddenly rode out into the path of defendant's truck thereby creating a hazard, they would find for defendant. This offered instruction is based on the principles of emergency and our disposition of that question and the reason assigned therefor is conclusive that defendant was not entitled to a sudden appearance instruction. Defendant also offered an instruction on unavoidable accident which defined the term ''unavoidable accident'' as meaning an unforeseen and unexpected event occurring to the person affected by it, and of which his own agency is not the proximate cause.

Since we have determined that defendant was not entitled to emergency instruction because of his own negligence and contribution to the emergency or accident, it necessarily follows that defendant was not entitled to this offered instruction.

Defendant offered another instruction on imputed negligence; that is, the negligence of Mary Imes should be imputed to her daughter, Marilyn Carol Shallberg. This offered instruction is based upon the theory that according to the evidence of Mary Imes the daughter was not a guest, but on the contrary she and her·mother were going to town on business. Mary Imes was asked where she was going on the occasion of the accident and she answered: ''We were going down town on business.'' It is not clear whether Mary Imes was going on her own business or the daughter was going on her own business, nor is it shown that the business referred to was a joint enterprise. We do not think this meager evidence is sufficient to establish a joint enterprise such as to make Mary Imes and her daughter joint principals, or each the agent of the other, or otherwise, sufficient to warrant an instruction on imputed negligence.

The next alleged error relates to the instructions given by the court. In instruction No. 1 the court instructed the jury as to the duty of the driver of the truck substantially in the language of the statute, inter alia, that it was his duty to drive on his right side of the highway wherever possible unless the left side thereof was clear of all traffic or obstructions and presented a clear vision for a distance of at least 150 feet ahead. Defendant insists that this instruction should have been

qualified because of the boys on the bicycles in front of defendant's truck which made it necessary for the driver to depart from the rule of driving on his right side of the road. The driver of the truck admits that he saw plaintiff's car approaching from the opposite direction when he left his side of the road and invaded plaintiff's side, but attempts to justify his act because the boys on the bicycles were in front of him. This relates back to the question of emergency, a condition which defendant's driver brought upon himself. We find no merit in the complaint directed to instruction No. 1.

It is next insisted that instructions 2 and 3 are inconsistent and for that reason confusing and prejudicial to defendant. Instruction No. 2 first set out the duties of Mary Imes as to the operation of her car on the highway, and further told the jury that if they believed from the evidence that she failed in any one or more of said duties and her failure was the *sole cause* of the collision, the law is for the defendant against both plaintiffs and they should so find. Instruction No. 3, was, in substance, that if the jury believed from the evidence that the driver of defendant's truck failed in any one or more of his duties as set out in the first instruction, and if the plaintiff Mary Imes failed in any one or more of her duties as set out in the second instruction, and if the failure of both so concurred to cause or bring about the collision and but for such failure of both the collision would not have occurred, the jury should find for the defendant on the claim of the plaintiff Mary Imes, and find for plaintiff Marilyn Carol Shallberg on her claim against the defendant.

We do not see any conflict or inconsistency in the above two instructions. Instruction No. 2 authorized the jury to find for defendant against both plaintiffs if they believed from the evidence that the negligence of Mary Imes was the sole cause of the accident. This is, in substance, the usual form of instruction given in such cases. Instruction No. 3 authorized the jury to find for the defendant as against Mary Imes if she concurred in bringing about the collision and but for such concurrence the collision would not have occurred, and further authorized the jury to find for Marilyn Carol Shallberg if the collision was caused by the joint or concurrent negligence of the defendant Mary Imes. The objections urged in brief of counsel to instruction No. 3 is that

the language "and you should find for the plaintiff Marilyn Carol Shallberg on her claim against the defendant Bybee Brothers" was in effect a peremptory instruction. It will be noted that the quoted language does not stand alone as an independent instruction but it is used in connection with and dependent upon the previous part of the same istruction which required the jury to believe that the collision was brought about by the concurrent negligence of defendant and Mary Imes before it could find for Marilyn Carol Shallberg. It may be conceded that instruction No. 3 is somewhat inaptly formed but we do not think it was misleading. We think the language contained therein was sufficiently plain to inform the jury that if Mary Imes was negligent or concurred in the collision to the extent that it would not have occurred but for her negligence or concurrence, the law was against her and for the defendant; but Marilyn Carol Shallberg was entitled to recover against the defendant if the collision was caused by the concurrent negligence of the defendant and Mary Imes. We think the instruction as a whole is substantially correct.

Finding no error prejudicial to the substantial rights of the defendant, the judgment is affirmed.