## Kentucky Virginia Stages, Inc., v. Tackett's Adm'r.

April 20, 1943.

Keenon & Odear for appellant.

Burke & Burke for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER—
Reversing.

The appeal is from a judgment in the sum of $5,000 in favor of appellee as damages for the death of his daughter, Aurora Tackett, 11 years of age. She was struck by a bus owned and operated by appellant, Kentucky Virginia Stages, Incorporated, while passing through the small village of Dorton in Pike county, on the 28th day of November, 1940. The bus was traveling in a general northerly direction and the little girl was traveling in a general easterly direction, and, at the point of impact, was approximately 4 feet from the berm on the eastern side of the road and directly in front of a restaurant, the entrance to which was approximately 40 feet west of the place of the accident. Shelby creek runs parallel with the road and to the east thereof. There is a bridge over Shelby creek directly east of the scene of the accident which serves the houses situated along the road on the eastern bank of the creek. The Tackett family lived in one of the houses served by the bridge and considerably removed therefrom, but a short time before the accident, Aurora was visiting the house of a neighbor which was directly opposite and across the bridge from the store. Immediately before the accident, Aurora went to the store for the purpose of obtaining change for a dollar bill and was returning to the neighbor's home when the accident occurred. The evidence is conflicting as to whether she commenced running immediately upon leaving the store or whether she walked fast and after hesitating on the western berm started to run across the highway. There were two cars parked in front of the store and the path she took required her to pass between them. The black top of the road was 16 to 18 feet in width. The car parked nearest the direction from which the bus was traveling was about 40 feet south of the entrance to the store. One of the passengers on the bus testified that he saw the child leave the store, pass between the parked cars, and proceed across the highway; that when he first noticed her the bus was 150 feet away. He and other passengers on the bus estimated the driver was going approximately 35 miles per hour. The driver of the bus testified he was traveling at a rate of about 25 miles per hour and was within 25 or 30 feet of the child before he saw her approaching on the highway. The child was thrown about

40 feet. There were skid marks evidencing the application of the brakes for approximately 70 feet along the highway commencing approximately 40 feet south of the point of impact. The witnesses variously estimated that the bus ran from 30 to 97 feet after hitting the child before it came to rest on the berm alongside the highway.

It is vigorously argued that the evidence was not sufficient to submit the case to the jury, but we are of the opinion that there is no merit to this contention. It was the duty of the driver of the bus to keep a lookout ahead. At least one of his passengers, who, it must be presumed, was not in as favorable position to see ahead as was the driver of the bus, saw the child running in the direction of the intersection of her path with that of the bus when the bus was 150 feet away from the place she was struck. The bus driver stated that he did not see the child until he was within 25 or 30 feet of her. From this evidence it could reasonably be inferred that the driver had failed in his duty to keep a lookout ahead. The driver testified that upon seeing the child, he immediately applied the brakes and stopped the bus as rapidly as possible. From the evidence that the brakes were applied 40 feet south of the place of the accident and that the bus traveled 97 feet beyond, a total distance of 137 feet, the jury reasonably could have inferred that the operator of the bus was traveling at such speed as to have not had the bus under reasonable control, thus violating another duty to the deceased. It would not have been unreasonable for the jury to have inferred from the evidence that the driver of the bus saw the child when he was 150 feet from the point of the collision and that she was traveling toward a position of danger and that he failed to use the means at his disposal to avoid the accident by waiting too long to apply the brakes. Nor can it be said that the deceased was guilty of contributory negligence as a matter of law. In crossing the road, it was her duty to use the degree of care for her own safety that an ordinarily prudent child of her age would use in like and similar circumstances. As to whether her action on the occasion mentioned amounted to contributory negligence became a question for the jury to determine under proper instructions of the court. It is manifest that the record does not support the contention that the evidence was not sufficient to submit the case to the jury.

The next complaint is that the court erred in admitting incompetent evidence and refusing competent evidence. The objection to the introduction of a map drafted by a surveyor who testified is that the map is confusing in that its legend does not describe all the markings on the map, but we see no objection to its introduction on that account. The defendant had ample opportunity to examine the draftsman of the map when he was placed on the witness stand and to inquire of him what the markings purported to indicate, and even had the right to require him to extend the legend to show the facts it wanted to call to the attention of the jury. Nor do we see any objection to its introduction on the ground that the draftsman did not see the accident or was not instructed in the drafting of the map by a witness to the accident. If that could be an objection to a map being introduced in evidence we venture to say there would be few maps introduced.

Charlie Williams was asked,

"Q. Did you see anything on the highway there, any evidence that anybody had been hit? A. Well I seen where it looked like a shoe had scraped the road, where they say it had hit.

"Q. Where did you see that, where was it on the highway, what place? A. It was about 4 feet from the right hand side of the shoulder of the road coming down, about 4 feet inside the hard top."

This evidence was not incompetent, but if it had been, it tended to locate the place of the accident at exactly the place both plaintiff and defendant agree it occurred and about which there was no issue in the case. That witness was asked, "Q. About how many people would you say travel that road across there a day?" It is now insisted that the court should not have permitted the question to be asked because it is claimed in the brief that the road about which the witness was testifying was a quarter of a mile from the scene of the accident, but, assuming the statement in the brief to be true, and it is contended by plaintiff that it is not, the answer in response to the question was perfectly harmless and was in the following words:

"A. Well I would not have any definite answer to that because they come and go there at all times a

day, several travel it going and coming and trucks going in and out to the mill.''

It appears that witness Bill Hounshell had executed a written statement previous to the trial, the contents of which were at some variance with his testimony. The statement was offered in evidence and the court refused to permit it to be introduced. We believe the court was not in error in refusing the statement. Attorney for defendant asked the witness if he had not made and executed a writing containing statements apparently at variance with those testified to. The witness admitted that he had and explained the variance more or less satisfactorily by stating that at the time he gave the statement before the trial, he was guided by his memory, but, since giving the statement, he had measured distances and testified as to the measured distances on the trial of the case. If the witness had denied making the former statements, no doubt the court would have permitted defendant to have introduced the writing for impeachment purposes. Defendant offered to introduce a letter which it claims was written by the witness Collins. The letter had Collins' name signed to it and contained language insinuating that Collins was willing to sell his testimony. This letter was properly refused because there was no evidence offered that Collins was the author of the letter. The court refused to permit the witness Lumpkin to testify that Roe Soward and Bill Hounshell offered Lumpkin a drink of liquor the day before he testified. In support of the contention that this was error, counsel for appellant would have us infer that Roe Soward and Bill Hounshell were acting for appellee and trying to influence Lumpkin to testify for appellee, but the record, as it stands, is not susceptible of such inference. There is nothing to show any connection between the incident and the inference sought. The deposition of Lora Robinette was read to the jury. Written exceptions were not filed, but the court sustained an objection to one answer which counsel argues was error. The witness stated that the child ran across the road in the path of the bus. We believe this testimony to have been competent and the court should have permitted it to be read to the jury. But every other witness in the case, those for the plaintiff as well as those for the defendant, testified to the same fact and that point appears not to be in issue as far as the evidence is concerned. Complaint is

made that the court erred in the instructions to the jury, and in refusing to give the instructions offered by the defendant. The instructions are almost verbatim the ones approved by this court in the case of Dixon v. Stringer, 277 Ky. 347, 126 S. W. (2d) 448. It is said that instruction No. 1 is erroneous because of lack of evidence justifying the court in instructing the jury as to the defendant's duty in respect to using reasonable and proper speed, to keep the car under control, to keep a lookout ahead, or to give timely warning of his approach. All of these objections are answered earlier in this opinion in discussing the complaint that the evidence was not sufficient to submit the case to the jury. Further discussion would be superfluous.

Instruction No. 2 charged the jury that they should find for the plaintiff if they believed from the evidence that the operator of the defendant's bus discovered plaintiff's decedent's peril, or by the exercise of ordinary care could have discovered the peril, and failed to use ordinary care and the means at his command to avoid striking her. It is argued that all the witnesses testified that the bus was on the right-hand side of the road and when the child started to cross the road the operator applied his brakes, swerved to the right, and did everything possible to avoid the injury. Assuming this to be true, one of the passengers saw the child before she got to the point of crossing the road. This witness testified that the child was running toward the very place she was struck and as we have heretofore stated it would not have been unreasonable for the jury to have believed that the driver discovered the peril of the child at the same time his passenger did. But irrespective of that, the defendant itself offered an instruction on discovered peril and having invited such an instruction it cannot now complain because the court gave one on that phase of the case. Counsel is more urgent that the court erred in refusing the instructions offered by the defendant than in giving the ones he did. The first rejected instruction would have charged the jury that it was the duty of the deceased if she saw the bus, or by the exercise of ordinary care could have seen the approaching bus, to yield the right of way and "before attempting to cross said highway to have allowed said bus to pass, to exercise the use of her sense of seeing and hearing before attempting to cross said highway." We know of no stat-

ute or rule of law requiring a pedestrian to yield the right of way to a motor vehicle except KRS 189.570 (section 2739g-69s, Carroll's Kentucky Statutes) which has no application to country roads or villages where there are no intersections or marked crosswalks. The next instruction offered and rejected incorporated the law of sudden appearance. No matter what the rule may have been previously, the rule in this jurisdiction now has been fixed by this court in Dixon v. Stringer, supra, where the history of the progress of the law on sudden appearance has been carefully reviewed and the following principles established: The defendant is not entitled to an instruction on sudden appearance unless it be shown that the pedestrian slipped, fell, or was propelled into the path of the car involuntarily, or in actions by adults, when contributory negligence is not pleaded. And it is not proper in actions where the pedestrian was an infant chargeable with contributory negligence, as the plaintiff's decedent was in this case, unless there was evidence that she slipped, fell, or was propelled into the path of the bus involuntarily. It is now the concept of this court, that in cases containing neither of the exceptions above, the theory of sudden appearance is sufficiently presented to the jury by a contributory negligence instruction. The next instruction was one on sudden emergency. The sudden emergency doctrine has no application to the facts in this case, and would be applicable only if the child's death had been caused by an emergency which resulted in the bus driver's endeavor to avert another accident. The next instruction was properly rejected because it attempted to place the duty on the deceased to give the right of way to the bus under section 189.570, KRS (section 2739g-69s, Carroll's Kentucky Statutes), which as we have seen is not applicable to cases of this character, and additionally, because it would have required the jury to have found the deceased to be guilty of negligence if they believed from the evidence that she left a place of safety knowing that the bus was approaching. There was no evidence justifying this instruction. Of course she was in a place of safety when she was in the store but there is no evidence from which it could be inferred that she knew of the approach of the bus at that time. At all times after leaving the store she was proceeding into a place of danger but there is no evidence that she knew of the approach of the bus. The eighth instruction it is claimed should have been given

was more or less all inclusive, defining the duties of plaintiff's decedent, the proper ones of which were given by the court and the improper ones of which have been treated elsewhere in this opinion. We are of the opinion that the instructions given covered all the law of the case and fairly and clearly presented defendant's theory for determination by the jury.

But the complaint of the court's ruling on the motion for continuance is well taken. When the case was called for trial appellant filed motion for a continuance and in support thereof made affidavit that the witness Dixie Sowards was in Charleston, West Virginia, which fact was not known to appellant until too late to give notice and take her deposition; that an agent of appellant had visited her in Charleston and, upon her promise to attend the trial as a witness, paid her a sufficient amount of money to defray her expenses to and from the trial. The affidavit then set forth the testimony she would have given had she been present, which testimony was extremely material to the defense of the case. The court refused to continue the case or permit the affidavit to be read. Miss Sowards had previously resided within the jurisdiction of the court and appellant had no reason to believe that her presence could not be commanded until too late to take her deposition. We are of the opinion that under those circumstances the court should have permitted the affidavit as to her testimony to be read. In Cincinnati, N. O. & T. P. R. Co. v. Duvall, 263 Ky. 387, 92 S. W. (2d) 363, it was held that it was error to deprive a party of the benefit of the testimony of an absent witness in some of the modes recognized by the law, even if it be the least effectual one of reading the affidavit of counsel, where the witness had promised to attend and the party is surprised at his failure to do so. Other cases so holding are cited in that opinion. The evidence both as to negligence and contributory negligence is very close. It may be that even the reading of an affidavit as to what an additional eyewitness would testify would have been sufficient to have changed the minds of the jury.

For that reason we are of the opinion that the error was prejudicial to the substantial rights of appellant and that the judgment accordingly should be reversed.