233 S.W.2d 1002 (1950)
LEVER BROS. CO.
v.
STAPLETON.
Court of Appeals of Kentucky.
November 3, 1950.
*1003 G. E. Reams, Edward G. Hill, Harlan, for appellant.
Daniel Boone Smith, Ray O. Shehan, Harlan, for appellee.
STANLEY, Commissioner.
The appeal is from a judgment for $10,000 for the death of Mize Milton Stapleton, a 6 year old boy, caused by an automobile. The fatal accident occurred September 3, 1948, on the highway between Harlan and Pennington Gap, Virginia, at the hamlet of Cranks Creek. There are a store, in which the post office is kept, and eight or ten dwelling houses in the group. Just before the accident, a school bus had unloaded 25 or 30 children there and several cars were parked in front of the store. Three Stapleton children, ages 6, 9 and 10, had been given a ride to the store, where they were going to buy candy, in their uncle's truck. They and four Middleton children were in the body of the truck, which had slat sides covered with a tarpaulin as a canopy. The truck, headed east, stopped on the south side of the highway (the right side) with the right wheels off the pavement, leaving about 15 feet clearance between the truck and the other side of the paving. Martin Stapleton, the 9 year old boy, got out and ran across the *1004 road. Mize swung down from the back end. He was struck by a Plymouth automobile traveling west and was killed almost instantly, apparently from severe fractures of the skull.
The evidence introduced by the plaintiff is that the automobile was going 50 or 60 miles an hour and no horn was blown as it approached the congested area. The road was clear and straight for 2/10ths of a mile. Tire marks on the highway indicated the wheels were sliding, or not turning, for 136 feet from the point the boy was hit. It was not stopped for 166 feet. But the evidence does not describe these marks in relation to the center of the road. There is no evidence of a swerving from a straight away course. The body was knocked 54 feet to the south side of the road, partly off the paving, or on a tangent from the center or the north side where the car was running. Lon Middleton, the boy's uncle, who was in the cab, and his 11 year old son Merle, in the back of the truck, testified that the boy was standing beside and at the back of the truck when he was hit. Merle indicated by illustration that Mize was 2 or 2½ feet out in the road but yet well on his side of it, leaving the inference that the automobile was on the wrong side of the center when he struck the boy. This witness, however, qualified his direct testimony by saying that Mize had started across the road and was hit by the fender of the car. The deceased's 11 year old brother, James, testified that he was getting out of the truck after Mize, who had jumped out and "started across the road" when he was struck by the bumper of the automobile and knocked "up in the air and fell way down the road." Through a state police officer, introduced by the plaintiff, the defendant produced photographs of the automobile showing a considerable dent in the front of the left from fender just back of the headlight, which indicates the contact was not with the bumper but the corner of the car. However, there is no proof how long this dent had been there.
The driver of the automobile, Hinkle, did not testify and his absence is unaccounted for. The evidence of the defendant, especially that of three or four high school girls looking out of the window of the store, is that the child ran across the highway into the path of the oncoming car and collided with the fender. These witnesses, like some of us older persons, were not very good in estimating distances certainly and the speed of an automobile probably. They say the car was traveling only 15 or 20 miles an hour, and ran only about 25 feet after it struck the boy.
The case was submitted under an instruction permitting recovery by the plaintiff upon the belief by the jury that the driver of the automobile failed to exercise ordinary care in its operation, to keep it under reasonable control, to drive it at a reasonable speed considering the condition and the use of the highway at that time and place or to give timely notice of the approach of the car by sounding the horn. Instructions on sudden appearance of the child from behind the truck and unavoidable accident authorize a finding for the defendant. Another instruction merely stated that it was the duty of the boy to exercise ordinary care for his own safety in crossing or attempting to cross the highway.
In testing the sufficiency of the evidence, we, of course, take that most favorable to the plaintiff, with all reasonable inferences. That evidence is that the automobile came into a congested area where children had but recently alighted from a school bus. The estimates of three witnesses that it was being driven at 50 or 60 miles an hour, the terrific impact upon the child, the undenied skidding after the brakes were applied, all indicate an illegally excessive speed. KRS 189.390, 1948 edition. It could well be inferred or believed that the driver saw the first child run across the road and had he been keeping proper lookout and running at a reasonable and prudent speed under the conditions, he could have avoided striking the second child. The same is true with respect to the failure to sound the horn. It may not be said that on approaching such a congested area, where a group of children might well have been anticipated and where there were cars parked on both *1005 sides of the road, failure to sound a horn is not negligence as a matter of law. KRS 189.080; Best's Adm'r v. Adams, 234 Ky. 702, 28 S.W.2d 484. The cases cited by the appellant are not in point. They are where the driver of the car could not have seen the person struck nor have had time to give such alarm. We regard the evidence sufficient to take the case to the jury. Brown McClain Transfer Co. v. Major's Adm'r, 251 Ky. 741, 65 S.W.2d 992; McCray v. Earls, 267 Ky. 89, 101 S.W.2d 192; Kelly v. Marshall's Adm'r, 274 Ky. 666, 120 S.W.2d 142; Vansant v. Holbrook's Adm'r, 285 Ky. 88, 146 S.W.2d 337; Kentucky Virginia Stages v. Tackett's Adm'r, 294 Ky. 189, 171 S.W.2d 4; Bright v. McAllister, 310 Ky. 512, 221 S.W.2d 67.
The appellant challenges the sufficiency of the evidence to prove that the relation of master and servant existed between the defendant and the driver of the automobile. A captain of the State Police testified that the car "was loaded down pretty heavy" with samples of soap and advertising display cards bearing the name of the appellant, Lever Brothers Company. A book of order forms such as is usually carried by salesmen, bearing the defendant's name, was also in the car. A copy of an application for the license of this car for the year 1948, duly attested by the Registrar of Motor Vehicles of Ohio, showed the defendant owned the car, at least at the time it was licensed four months before the accident. Hinkle, the driver, did not live in Harlan County and had been making regular calls both before and after the accident upon at least one neighborhood merchant, selling the defendant's products. An attorney representing the defendant had procured the release of the car to it by the State Police. There was no evidence whatever to overcome any item of this presumptive proof. The court submitted this issue under instructions which placed the burden upon the plaintiff to prove that the driver was an employee of the defendant and was at the time engaged in its business or for its behalf, acting within the scope of his employment. We cannot join the appellant's counsel in speculating that at the particular time Hinkle may not have been on duty or driving the car in the course of his employment. The circumstances and reasonable inferences are to the contrary. We regard the proof as ample. Gainesboro Telephone Co. v. Thomas, 234 Ky. 373, 28 S.W.2d 34; Ashland Coca-Cola Bottling Co. v. Ellison, 252 Ky. 172, 66 S.W.2d 52; Huber & Huber Motor Express v. Martin's Administrator, 265 Ky. 228, 96 S.W.2d 595; Webb v. Dixie-Ohio Express Co., 291 Ky. 692, 165 S.W.2d 539.
But the appellant insists that the testimony tending to establish ownership of the car and relationship of the driver was incompetent. The automobile had been driven to Harlan by another than Hinkle with the body of the child in it. The identity of the car is conceded. The point as to incompetency is that the police officer did not see the car until it was at his headquarters in Harlan and that there is no evidence that it contained these products and advertising matter at the time of the accident. The witness testified that he had talked with Hinkle the day of the accident at police headquarters where the car was and that Hinkle was present when the officer examined the car and its contents. It would stretch realism to the breaking point to say that the circumstances were not sufficient to induce a belief by the jury that anyone in such a brief time had "planted" these things in the car of a man shown to have been selling the defendant's products. The evidence was competent.
The record of the application for a license filed with the Registrar of Motor Vehicles of Ohio and the issuance of the license with the tags on the car was on April 30, 1948, four months before the accident. Appellants say that the car might have changed hands several times during the intervening period. It is suggested that it may not have been this particular Hinkle who had been selling the defendant's products in the community three or four days before, or that he might have left the company's employment in the meanwhile. There is not such difference in time or events that would negative the presumption of continuity of ownership and relationship *1006 as to make the evidence irrelevant and incompetent, as the appellant argues. It was sufficient to raise a rebuttable presumption and there was no rebuttal evidence of any sort.
Another claim of incompetent evidence is the testimony of the child's father. He described the skid or tire marks on the highway and the blood spots as being 54 feet from the truck and at the time it had been moved. Eye witnesses had pointed out all these things to the father and testified that they were in the same condition except perhaps the truck when the father arrived on the scene. There was no error in admitting the testimony. Bybee Brothers v. Imes, 288 Ky. 1, 155 S.W.2d 492.
The criticisms of the instructions are not well taken. In the main, they relate to insufficiency of the evidence. The principal instruction follows that prepared by this court and published as Sec. 102, Stanley's Instructions to Juries. Under the present circumstances, the instruction should have included the lookout duty. The omission, however, was to the defendant's advantage.
The court, as we have stated, gave an instruction (marked F) offered by the defendant which advised the jury that it was the duty of the child to exercise ordinary care for his own safety. It carried the phrase, "As defined in instruction E". That instruction E, however, was refused and not given. It contains specific definitions of ordinary care as applied to the driver of the automobile and to "boys of the age, intelligence and experience" of the decedent. It also defined ordinary care on the part of his parents, which related to another refused instruction marked C to the effect that the parents may have been negligent in sending or permitting the child to go upon the highway and cross the road and place himself in a position of danger. See Brown McClain Transfer Co. v. Major's Adm'r, 251 Ky. 741, 65 S.W.2d 992; Burton v. Spurlock's Adm'r, 294 Ky. 336, 171 S.W.2d 1012. There was no evidence whatever warranting an instruction on negligence of the parents. Apparently it was offered upon the idea that the child was on the highway when picked up by his uncle some distance back.
The instruction F was incomplete but it should have been omitted altogether. It might have proved prejudicial to the plaintiff, but certainly was not to the defendant. A six year old child is not chargeable with contributory negligence. Tupman's Adm'r v. Schmidt, 200 Ky. 88, 254 S.W. 199. The court gave an instruction under the sudden appearance rule based upon the evidence of the defendant that the child suddenly darted out from behind the truck from which he had alighted or ran into the side of the automobile or came so close in front of it that the driver could not by exercising ordinary care and the use of the means at his command either have stopped the car or changed its course or given the child warning by the usual signal in time to have avoided the collision. The instruction is patterned after that prepared by this court in Dixon v. Stringer, 277 Ky. 347, 126 S. W.2d 448; Sec. 108, Stanley's Instructions to Juries. As there stated, it is a proper instruction under certain circumstances as more fully and fairly presenting the defense of freedom from negligence where the person injured or killed could not, under the law, be charged with contributory negligence.
But the appellant argues that the verdict cannot be sustained as it is contrary to the law, that is, contrary to the sudden appearance instruction or the instruction on unavoidable accident. It relies upon the general rule that it is the duty of the jury to follow the instructions whether right or wrong. See Louisville & N. R. Co. v. Muncey, 229 Ky. 538, 17 S.W.2d 422. The point begs the question. As we have held, there was evidence to the contrary, that is, evidence upon which the jury found the defendant's driver was negligent. If he was negligent, then the defendant could not avoid liability under its claim of sudden appearance or unavoidable accident.
In overruling the defendant's motion for a peremptory instruction, the court *1007 stated to the attorneys that the case should be submitted to the jury because the evidence was conflicting as to the speed of the automobile and that there was evidence the boy was killed on the left side of the road, thereby showing the car was on the wrong side. The defendant then moved to discharge the jury, which motion was overruled. As stated in the bill of exceptions, these remarks were made in an ordinary voice and the jury was not in the box and heard nothing that was said. The appellant argues that this alleged misconduct in making the statement is error. It points out that the stenographer's transcript of the colloquy does not contain the phrase which appears in the formal bill of exceptions, "the jury was not in the box and heard nothing that was said." The court had power and right to add this as a matter of fact not shown in the stenographer's report. There was no attempt to show it was untrue. The point of error is without merit.
The judgment is affirmed.