B. Edward RYAN, d/b/a Ryan Packing Company and Harry M. Kirk, Appellants,

v.

Monotie PAYNE, Amos Payne and Joey Miracle Payne, an Infant Who Sues by his Mother and Next Friend, Monotie Payne and John Nichols, Appellees.

Court of Appeals of Kentucky.

May 30, 1969.

As Modified Oct. 29, 1969.

Rehearing Denied Oct. 31, 1969.

Henry D. Stratton, Pikeville, Charles E. Duncan, Duncan & Lehnig, Louisville, for appellants.

O. T. Hinton, Pikeville, Emmett G. Fields, Whitesburg, J. K. Wells, Paintsville, for appellees.

OSBORNE, Judge.

Monotie Payne, Joey Miracle Payne and Amos Payne recovered judgment against the appellants, B. Edward Ryan, d/b/a Ryan Packing Company and Harry M. Kirk, in the total sum of $60,100 as compensation for personal injuries and damage to an automobile occasioned by a collision which took place on Highway 23 between Shelby and Pikeville on December 29, 1965. The controversy between the parties on this appeal arises out of the fact that the trial court directed a verdict against the appellants. Upon this appeal, appellants insist they were entitled to present their case to the jury under the theory that their driver was faced with a sudden emergency not of his own making.

Appellees contend that appellants' driver was negligent as a matter of law and if he were faced with an emergency, it was one of his own making and, therefore, he is not excused. Before the trial court can be justified in directing a verdict there must be no issue in the case upon which reasonable minds can differ considering all the evidence and especially that most favorable to the party against whom the verdict is directed. In order to resolve this question, we turn to the evidence.

The collision occurred on December 29, 1965, some time between 5:30 and 6:00 p. m. There is some conflict in the testimony as to the status of daylight at that time. However, appellee testified that she had her headlights on, therefore, we conclude that it was, if not totally dark, very close thereto.

The stretch of highway in question runs generally north and south between Shelby, Kentucky, and Pikeville, Kentucky. The exact point of impact was in front of a store described in the evidence as Vanderbilt Tire Company. The highway has two lanes, and is approximately 20 feet wide. Appellee was driving south; appellant was driving north. Just before getting to the Vanderbilt Tire Store, coming from the south headed north, there are two driveways which intersect from the east. These are referred to in the evidence as the Newsome driveway, which intersects approximately 80 to 100 feet south of the point of impact, and the Kelly driveway, which intersects around 300 feet south of the point of impact. Both roads intersect at approximately 45°, angling north. As appellants' ton and one-half refrigerator truck (hereinafter referred to as the meat truck) was being driven north with 5000 pounds of meat, appellee, Monotie Payne, was coming south driving an automobile. Her young son was on the seat beside her. The meat truck pulled across her lane and she hit it. The meat truck had swerved to miss a garbage truck driven by John Nichols, another appellee herein. The garbage truck had emerged from either the Kelly driveway or the Newsome driveway in front of appellants' meat truck. There is a sharp conflict as to where he entered and whether or not he had taillights. It is the testimony of appellants' driver that he suddenly cut his meat truck left into the path of Mrs. Payne's automobile causing the collision, because he was suddenly confronted with the garbage truck.

To take the testimony most favorable to the appellants, which we must do, it shows that the time was 6:00 p. m. and it was completely dark; that the meat truck was traveling between 35 to 40 miles per hour with the headlights on low beam;[1] that the garbage truck emerged from the Newsome driveway; that the driver of the meat truck first saw it approximately four or five car lengths ahead of him; that it was moving slowly at ten to fifteen miles per hour and that it had no lights and was loaded with a bunch of boards and garbage. The driver of the meat truck, upon first observing the garbage truck blocking the road, hit the brakes, locked the wheels and

---

1. This was Kirk's testimony. There was testimony by a state trooper that judging from the skid marks his speed was faster. This is discussed later in the opinion.

skidded 158 feet. Skid marks led from the meat truck's lane into and across the left lane indicating the driver applied the brakes hard and cut the truck hard to the left.

The foregoing facts are all consistent with the appellants' theory of the case that its driver was faced with a sudden emergency and had to brake and turn into the left lane in order to avoid colliding with the rear of the garbage truck.

■ Appellees contend, that admitting these facts, appellants were not entitled to a sudden emergency instruction because the evidence of appellants' driver shows that he did not see the garbage truck until he was four or five car lengths from it. They contend that this admission conclusively proves that he was either not keeping a lookout or that his lights were inadequate and that in either event his negligence either caused or contributed to the emergency. It is well settled that if a driver, by his own negligence, creates the emergency, he cannot then rely upon the emergency to absolve himself from the natural consequences of his act. Rabold v. Gonyer, 285 Ky. 618, 148 S.W.2d 728 (1941). In that case the driver saw a child in the street 348 feet away, continued his progress down the street while the child crossed to the center and when he was 150 feet away saw the child standing on the center line, but did not slacken his speed. The child then moved back out into the street. The driver was forced to swerve suddenly to the other side of the street colliding with oncoming traffic. We held under that set of facts that the driver's negligence in not anticipating the action of the child pedestrian created the emergency. However, we have consistently held that where a motorist suddenly comes upon an unlighted vehicle in his lane of travel at night, this constitutes an unexpected event which might not reasonably be anticipated by an ordinarily careful and prudent person, and therefore, does not amount to negligence as a matter of law. Owen Motor Freight Lines v. Russell's Adm'r, 260 Ky. 795, 86 S.W.2d 708 (1935); Tillman v. Heard, Ky., 302 S.W.

2d 835 (1957); Slusher v. Brown, Ky., 323 S.W.2d 870 (1959).

■■ We have likewise held that where one is forced to suddenly switch lanes in daylight because of a vehicle in front of him suddenly checking its speed this is not as a matter of law such negligence as to warrant a directed verdict. Nall v. Larkin, Ky., 421 S.W.2d 74 (1967); McCoy v. Carter, Ky., 323 S.W.2d 210 (1959); Pratt Fruit Co. v. Sparks Brothers Bus Co., 313 Ky. 593, 233 S.W.2d 92 (1950). A test ordinarily applied by a jury in order to determine negligence is subjective in nature. We are of the opinion that failure to observe and properly judge traffic either standing or moving slowly upon the road ahead cannot be said as a matter of law to be negligent, be it daylight, dusk or dark. However, we have also recognized that in dealing with this problem no hard or fast rule can be laid down. Slusher v. Brown, supra; Crawford Transport Co. v. Wireman, Ky., 280 S.W.2d 163 (1955); De Buyser v. Walden, Ky., 255 S.W.2d 616 (1953); City of Providence v. Young, 227 Ky. 690, 13 S.W.2d 1022 (1929). Likewise, we have consistently held that the adequacy of headlights to reveal objects upon the road is one for the jury and the fact that a driver does not detect an object until it is well within the maximum range required of headlights by the statute does not in itself indicate negligence as a matter of law. Service Lines, Inc. v. Mitchell, Ky., 419 S.W.2d 525 (1967).

■ For the foregoing reasons, we are of the opinion that the presence of the unlighted truck and the position occupied by it could have been such an unexpected event that we cannot say as a matter of law that it should have been anticipated by appellants' driver, therefore, the court should not have directed the verdict against the appellant.

■ In this action the Paynes first sued Ryan and Kirk, the meat company and its driver. Ryan then interpleaded Nichols,

the owner of the garbage truck. Following this the Paynes amended and made Nichols a party. Upon the trial the jury found that Nichols was not negligent. Since the Paynes did not appeal from this part of the judgment, it becomes final, as between the Paynes and Nichols. In all other respects the judgment is reversed for retrial. C. F. Cottrell v. Martin A. Ceder, Inc., 376 S.W.2d 536 (1964). Upon retrial the question to be submitted to the jury should substantially follow that set out in Webb v. Boydston, Ky., 439 S.W.2d 955, (rendered February 7, 1969).

▐ Since this case must be retried, it becomes necessary to discuss the testimony of two witnesses. These witnesses were the state highway patrolmen who investigated the accident. Both testified to the length of skid marks left by the meat truck and gave opinion evidence as to its speed based upon their use of published skid-speed tables [1] that are commonly used by police officials for the purpose of determining speed of a vehicle by the length of skid marks. It is insisted that the use of skid-speed tables is improper as there is no way to examine the accuracy of the table and there is no showing that the conditions prevailing at the time of the collision were the same or similar to those prevailing at the time the tables were compiled. For some time we have held that skid marks are admissible in evidence for the purpose of showing speed of the vehicle making them, this rule being limited by a proper identification of the skid marks. Bybee Brothers v. Imes, 288 Ky. 1, 155 S.W.2d 492 (1941); Lever Brothers Company v. Stapleton, 313 Ky. 837, 233 S.W.2d 1002 (1950). In the above cases the testimony as to the length of the skid marks was placed in evidence leaving to the jury the prerogative of making their own judgment as to the speed of the vehicle. In Lowe v. McMurray, Ky., 412 S.W.2d 571 (1967), where a witness attempted to state his opinion as to the speed of a vehicle

based solely upon the length of the skid marks, we affirmed a ruling by the trial court that the witness did not qualify as an expert, therefore, the testimony was properly excluded. We have never held that a properly qualified witness can give opinion evidence based solely upon the length of the skid as to the speed of a vehicle involved in a collision. This seems to be the generally accepted rule of law in most jurisdictions today. See Annot. 23 A.L.R.2d 112, 141 (1952). We believe that expert testimony as to the speed of an automobile from the length of skid marks, the force of impact, the type of vehicle, condition of the road and all surrounding factors is competent. In order for one to qualify as an expert it must be shown that he has had some special training and experience in this field. The mere fact that a person drives an automobile and has by happenstance viewed a few wrecks will not suffice. We further believe that the testimony of the expert cannot be solely based upon the use of tables alone especially where the officer has no personal knowledge of the mathematical and physical factors involved in compiling the tables. The testimony of the officer solely as to what is shown by the chart would be hearsay. Gray v. Turner, 245 Miss. 65, 145 So.2d 470; Breshears v. Myers, Mo., 266 S.W.2d 638 (1954); 8 Am. Jur.2d, Automobiles and Highway Traffic, § 990, p. 543. However, we think it is acceptable for the witness once he is qualified as an expert to employ the tables along with all other pertinent material in giving his opinion. Barge v. House, 94 Ohio App. 515, 63 Ohio Law Abst. 555, 110 N.E.2d 425 (1952). Under this rule it would be improper for the officer to state precisely what the table shows. However, the fact that the table is consulted will not render his testimony inadmissible.

Upon retrial of this action the court will be controlled in the admissibility of the highway troopers' testimony by the rules herein set out.

---

1. We are dealing with skid-speed tables as distinguished from braking charts. This opinion is not to be construed either pro or con as to the admissibility of braking charts.

Judgment affirmed in part, reversed in part.

MONTGOMERY, C. J., and MILLIKEN, REED and STEINFELD, JJ., concur.

EDWARD P. HILL and PALMORE, JJ., concur in results only.