## Chesapeake & Ohio Railway Company, et al. v. Ryan's Administrator.

(Decided February 28, 1919.)

### Appeal from Carter Circuit Court.

1. Railroads—Injuries to Trespasser on Train—Suit for Wrongful Death—Appointment of Administrator to Sue.—The court of the county wherein a trespasser on a train is injured by the negligence of a railroad company may appoint an administrator to sue the company, though the deceased was a non-resident and died in another state, and left no property nor indebtedness due him in this state other than his right of action.

2. Trial—Action for Wrongful Death—Negligence—Evidence—Sufficiency.—In an action against a railroad company and its brakeman to recover damages for the death of a trespasser on a train, evidence examined and the question whether the deceased was forced off the train held for the jury.

3. Trial—Action for Wrongful Death—Instructions.—In an action against a railroad company and its brakeman for the death of a trespasser alleged to have been forced off the train while it was going at an excessive rate of speed, an instruction submitting this issue was not erroneous because it failed to tell the jury that the deceased was a trespasser, or that the defendants had a right to eject him if they used proper care in doing so, since even though the deceased was a trespasser, the company had no right to force him off the train while it was going at a dangerous rate of speed.

4. Trial—Action for Wrongful Death—Instructions.—In an action against a railroad company and its brakeman for the death of a trespasser alleged to have been put off the train while going at an excessive rate of speed, an instruction telling the jury that if they believed from the evidence that deceased voluntarily attempted to get off or alight, "without being forced to do so," and sustained the injuries complained of, they should find for the

defendants, was not erroneous because of the use of the words, "without being forced to do so," since these words were necessary in order to give proper effect to the word "voluntarily."

5. Trial—Action for Wrongful Death—Instructions—Evidence—Error.—In an action against a railroad company and its brakeman to recover for the death of a trespasser, the refusal of the trial court to instruct the jury that the life tables introduced in evidence did not show the expectation of persons engaged in hazardous employments like coal mining, but only the expectation of persons accepted as' approved risks by standard life insurance companies, and the admission of testimony that the deceased contributed to the support of his mother and was a good, moral boy, were not prejudicial errors, in view of the fact that they could have affected only the amount of the verdict, and the jury's finding was only $3,000.00.

6. Trial—Instructions.—Where the only issue in the case was fully covered by the given instruction, it was not error to refuse an offered instruction which submitted the same issue in a more confusing form.

SHELBY, NORTHCUTT & SHELBY, JAMES CLAY and H. L. WOODS for appellants.

THEOBALD & THEOBALD and J. POWELL ROYAL for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Charging that his intestate was forced by Charles Maddix, a brakeman in the railway company's employ, to leave a freight train while it was traveling at an excessive rate of speed, and received injuries from which he died, Jerome Duvall, as administrator of Hobert Ryan, deceased, brought this suit against the Chesapeake & Ohio Railway Company and Charles Maddix to recover damages for his death. From a verdict and judgment in favor of plaintiff for $3,000.00 the railway company and Maddix appeal.

The intestate was injured in Carter county and was then carried by the railway company to Cabell county, West Virginia. At the time of his death, the intestate was neither a citizen nor a resident of the state of Kentucky. He owned no property of any kind in this state, and there was no debt or demand due him in this state. At the time of his death, he was a resident of Tazewell county, Virginia. The railway company was a citizen and resident of the state of Virginia, with its principal

office and place of business in the city of Richmond. After setting forth these facts, the first paragraphs of the separate answers filed by the defendants charged that the Carter county court had no power to appoint plaintiff administrator of the intestate, that said order was void and that plaintiff was without capacity to institute or maintain the action.

The alleged error of the trial court in sustaining a demurrer to this plea is the first ground urged for reversal. In the case of Brown's Admr. v. Louisville & N. R. Co. 97 Ky. 228, 30 S. W. 639, we held that the court of the county, wherein a non-resident is killed by the negligence of a railroad company, may appoint an administrator to sue the company though the deceased leaves no property in the state other than such right of action. While it is true that the court said, "and we deem the court of the county, where the injury was done and where the man died, the proper court to entertain such jurisdiction," we do not regard the death of the intestate in this state as necessary to confer jurisdiction. The statute provides that damages may be recovered in every case of death resulting from injuries inflicted by negligence or the wrongful act of another, and that the action shall be prosecuted by the personal representative of the deceased. Section 6, Kentucky Statutes. While the statute has no extra territorial effect, it necessarily includes deaths resulting from injuries inflicted by negligence or wrongful act in this state, and it is therefore not material where the deaths occur. In other words, the cause of action arises in, and is controlled by the law of the state where the injury occurred. Since a foreign administrator cannot sue, it follows that a contrary view would deprive the intestate of the right to prosecute in the courts of this state, the right of action given by the statute. Hence, we conclude that the county court of Carter county, the place where the intestate received the injury resulting in his death, had jurisdiction to appoint plaintiff as the administrator of the intestate, notwithstanding the fact that the intestate was a non-resident of this state, and his death occurred in another state, and he left no property nor indebtedness due him in this state other than his right of action.

. The next insistence is that the verdict is flagrantly against the evidence. It appears that Ryan was a boy, nineteen years of age. He resided at Pardee, Va., and

left there in company with three companions. They first went to Anwalt, W. Va., where they worked in mines for a while. They then went to Portsmouth, Ohio, and after working there a short time, started for McRoberts, Ky. They were "beating their way on freight trains." On the morning of the accident they were put off freight train No. 67 at Mt. Savage, the first station east of Hitchens. They then made their way to a point near Hitchens. West bound freight train No. 99 stopped at a point east of Hitchens, and the boys came toward the train apparently with the intention of boarding it. Maddix, the brakeman, motioned for them to stay off, but two got on at the undergrade crossing and the other two shortly thereafter. When Maddix approached the first two boys, they did not want to get off. Finally, however, they got off at a point west of the depot at Hitchens. They then tried to get back on the train, but Maddix watched them for some time. He then went to the third boy and told him to get off. Ryan was near the caboose and Maddix walked back to where he was. The speed of the train was then about twenty miles an hour. Maddix says that he found Ryan down in between two box cars and in a perilous position. He then motioned to the boy to come up on top of the cars, as he considered the speed of the train too great for him to get off in safety. When Maddix motioned for Ryan to come up, Ryan reached around and took hold of the ladder, and Maddix then stepped back a few feet from the end of the car. Maddix claims to have said nothing to the boy about getting off. When Ryan did not appear on top of the car Maddix looked over the side to see what he was doing, and saw him in a ditch four or five car lengths back, surrounded by section men. Ryan got off on the south side of the track, and there were four section laborers working near that point. The section men all say that they saw Ryan riding with his foot in the stirrup and that he just jumped or dropped off the car. The conductor, who was in the engine cab, stated that he saw Maddix walk back over the train; that Ryan put his foot on the ladder and held to the handhold, and rode in this position for two hundred yards. Ryan then got off, bounced forward and hit the bank and rolled back again. According to the evidence for plaintiff, Ryan fell in such a manner that his leg was thrown under the car, and he was so injured that he died soon thereafter. C. R. Hall testified that he reached

the point where the boy was hurt, within from two to five minutes after he got off the train. While lying there Ryan told him that Maddix had forced him off the train. J. O. Hall saw Maddix between the cars where Ryan was, just before Ryan got off the train. He reached Ryan in from two to five minutes thereafter, and Ryan said that the brakeman told him to get off or he would throw him off. Wick Fraley saw Maddix down between the cars with a man, making motions with his hands and head, just before the man came off. Ben Dickerson says that he reached Ryan as soon as he could walk about forty feet, and that Ryan told him that the brakeman tramped on his fingers and told him to hit the ground. W. D. Caudill states that he reached Ryan as soon as he could walk twelve or fifteen feet, and heard him say that the brakeman put him off the train, and made him hit the ground. The evidence of German Helms is to the same effect. It is argued that the evidence of the numerous witnesses, who testified to the circumstances under which Ryan got off the car, completely outweighs the statements made by Ryan. The difficulty with this contention grows out of the fact that the evidence of the section men does not necessarily contradict the statements of Ryan. They were not present and could not tell what actually took place between Ryan and Maddix. The only evidence of what then occurred consists of the statements of Ryan and those of Maddix. Viewing Maddix's testimony in the light of his admissions that he had previously put the other three boys off, it was certainly for the jury to say whether he actually forced Ryan to get off the train.

Instruction No. one is complained of because it did not tell the jury that Ryan was a trespasser, or that the defendant had a right to eject him if they used proper care in doing so. By the given instruction, the jury were told in substance to find for plaintiff, if they believed from the evidence that the intestate was forced off the train while it was running between twenty and thirty miles an hour, and by reason thereof received the injuries from which he died. This submitted the only issue in the case. The fact that Ryan was a trespasser was immaterial. The brakeman had no right to force him off of the train while the train was going at a dangerous rate of speed, and if the jury believed that such was the case, it was proper to hold the defendants liable.

Plaintiff also complains of instruction No. two, which is as follows:

"If the jury believe from the evidence that said Hobert Ryan voluntarily attempted to get off or alight from said moving freight train without being forced to do so, and sustained the injuries complained of in the petition, then in that event the law is for the defendants, and the jury should so find."

It is insisted that the instruction should not have contained the words "without being forced to do so." This complaint is without merit. Had the instruction omitted these words, the jury might have concluded that the act of Ryan was voluntary, whether he was ordered to get off or not, hence the words were necessary in order to give proper effect to the word "voluntarily."

The failure of the trial court to instruct the jury that the life tables introduced in evidence did not show the expectation of persons engaged in hazardous employments like coal mining, but only the expectation of persons accepted as approved risks by standard life insurance companies, and the admission of testimony to the effect that the decedent contributed to the support of his mother, and was a good, moral boy, are also urged as grounds for reversal. Manifestly, these alleged errors could have affected only the amount of the verdict, and since the finding in favor of plaintiff was only $3,000.00, we do not regard them as prejudicial.

Another error relied on is the refusal of the court to give the following instruction:

"The jury will find for the defendant if they believe from the evidence that when defendant Maddix discovered the presence of decedent, Hobert Ryan, upon the train in question, he motioned for him to come up on the top of the train, even though they may also believe the decedent misunderstood the meaning of said motioning and construed it to be a signal for him to leave said train."

As before stated, the only issue in the case was whether the decedent was forced off the train, or voluntarily left the train without being forced to do so. This issue was fully covered by the given instructions, and it was not error, therefore, to refuse the offered instruction, which submitted the same issue in a more confusing form.

Judgment affirmed.