### STAFFORD
v.
### FREIGHTWAYS, Inc. et al. (three cases).
### Nos. 7770–7772.

United States District Court
W. D. Missouri W. D.
Jan. 8, 1954.

Chet D. Vance and H. J. Gunnels, Jr., Clay C. Rogers, Reed O. Gentry and James W. Benjamin of Rogers, Field & Gentry, Kansas City, Mo., for plaintiffs.

Ike Skelton of Skelton & Bradley, Lexington, Mo., and David R. Hardy of Sebree, Shook, Hardy & Ottman, Kansas City, Mo., for defendants.

REEVES, Chief Judge.

On the early morning, of August 16, 1952, at about 3:45, an accident or a collision occurred on Highway No. 40, running in a general easterly and westerly

direction between Kansas City, and St. Louis, about one mile east of Bates City, Missouri, and approximately thirty miles east of Kansas City, Missouri. The tractor-trailer truck of the defendants was proceeding eastwardly and collided with a standing automobile on the eastbound traffic lane, in which several children were riding as passengers. They were sleeping. The collision resulted in the death of the young son of Myrtle Stafford, plaintiff in case No. 7770, and in serious injuries to her two daughters, who are plaintiffs by their next friend, in cases Nos. 7771 and 7772.

The defense, as shown by the pleadings, was that the driver of the tractor-trailer truck was not negligent but that negligence on the part of the operator of the automobile with which it collided caused the collision.

Many averments of negligence are set out in the several complaints, including averments that the driver of the tractor-trailer truck failed to exercise the statutory care as he proceeded eastwardly with his tractor-trailer truck on said highway.

The facts are scarcely in dispute. The automobile in which the children were passengers was old and was unfit for use on the highway. Myrtle Stafford, the plaintiff in case 7770, with others, had taken passage in said automobile operated by one Eison, for a pleasure ride. They had spent practically the entire night riding and traveling over the highway into Kansas City, Missouri, and thence back toward the place of their several homes. For a purpose not necessary to mention they had stopped near a farm house on the highway near the point where the accident occurred. The evidence disclosed that the automobile in which they were riding was not equipped with an efficient self-starter. And, moreover, it was without effective lights on its rear. The older persons in the car, including Myrtle Stafford, had left their seats and were endeavoring to move the automobile and to notify motor vehicles that may have been following. An automobile proceeding west-

wardly was near the point. It displayed bright lights, and was either standing or moving slowly. The operator of the truck saw the bright lights on the westbound car when he was 600 feet back of the place where the collision occurred. According to his testimony, the lights blinded him, not temporarily, but continuously, until he could not see beyond the automobile that emitted the lights. He reduced his speed but continued at a speed that would not enable him to stop in case of emergency. When he had passed the blinding lights and his eyes had adjusted themselves to make observations on the roadway he was within a few feet of the standing passenger car and was so close that, because of his speed, he could not stop.

He struck the passenger car with great force and violence, with the result that death and serious injury accrued to some of the young sleeping passengers. There was some testimony that, even with bright lights, a careful observer could have seen beyond the bright lights, and that the standing automobile could have been seen in the exercise of the care required by automobile drivers on the highways of Missouri. Be that as it may, the driver of the truck testified that he was so completely blinded that he could not see beyond the standing or slowly moving westbound automobile displaying its bright lights. By appropriate signals he had asked the driver of the westbound car to dim his lights. There was substantial failure of compliance with the request, so that the driver of the truck drove beyond the westbound car into an area completely blacked out so far as he was concerned.

Upon the above facts the application of pertinent provisions of the law is not difficult.

1. Section 304.010 RSMo 1949, V.A. M.S., imposed upon every person operating a motor vehicle on the highways of Missouri the duty and the obligation to "drive the same in a careful and prudent manner, and shall exercise the highest degree of care, and at a rate of speed so as not to endanger the prop-

erty of another or the life or limb of any person, * * *."

And by Section 304.370 the driver of an automobile is required to use a beam "directed high enough and of sufficient intensity to reveal persons and vehicles at a safe distance in advance of the vehicle, * * *." And, when meeting another car, the bright lights shall be appropriately dimmed.

By Section 304.350 automobiles on the highway must be equipped with "approved multiple-beam head lamps or auxiliary lamps or combinations thereof * * *."

No issue is made, but that the truck of the defendant was equipped with statutory headlights.

2. When the driver of the truck was some 600 feet back of the place where the accident occurred, he observed the car with bright lights either standing still or moving slowly toward the west and within a few feet of the place where the accident occurred. The lights of the westbound car were twice momentarily dimmed. The driver of the truck merely reduced his speed and passed eastwardly with the tragic results mentioned.

The Missouri decisions have considered similar situations, and, by analogy, simple appropriate principles of law may be applied.

In the case of Powell v. Schofield, 223 Mo.App. 1041, 15 S.W.2d 876, loc.cit. 880, the Springfield Court of Appeals discussed a somewhat similar situation in affirming a judgment for the plaintiff. In that case the plaintiff was blinded by the headlights of an oncoming car. He said, "he was not 'plumb blinded,' but could not see ahead to amount to anything." The plaintiff in that case collided with a standing bus not properly equipped with tail lights. The author of the opinion conceded that there were no authorities to the effect that the driver of an automobile in the nighttime, blinded by the headlights of an approaching car should stop. The author, however, was of the opinion that

when (loc.cit. 880 of 15 S.W. 2d) "near any city on our main highways the driver of a car will ordinarily meet an almost unbroken line of cars coming toward him at night. If he attempted to stop for each blinding headlight, he would no sooner overcome one 'blind spot' than another would appear. He would be compelled to stop and start unceasingly." The author then continued, (same page):

"There are undoubtedly cases where plaintiff should be declared guilty of contributory negligence as a matter of law in failing to stop or have his car under such control that he can stop within the range of his vision, when blinded by headlights. *But, ordinarily, we think, it should be a question for the jury.*" (Emphasis mine.)

In the case of Mitchell v. Dyer, Mo. Sup., 57 S.W.2d 1082, loc.cit. 1083, the Supreme Court of Missouri said that it was a proper fact for a jury to consider whether plaintiff "was blinded by the light of the on-coming car in determining the question of whether plaintiff was negligent. This was a proper fact for the jury to take into consideration. *The jury might have well concluded that plaintiff was negligent in not stopping his car when he was blinded by the lights and that defendant's truck did have a red light on the rear thereof but that plaintiff failed to see it because he was blinded by the glaring lights of the other car.*" (Emphasis mine.)

It will be observed that these were cases where the court submitted the question whether the plaintiff was guilty of contributory negligence.

In Weaver v. Stephens, Mo.App., 78 S.W.2d 903, loc.cit. 904, the Kansas City Court of Appeals, in discussing a case involving blinding lights said:

"The evidence, however, does not show that he was completely blinded for a time, but that the lights of the car which he met only partially or somewhat interfered with his vision,

and, while he did not come to a dead stop, he was traveling at a very moderate speed, and it was not the lights of the passing car which kept him from seeing the standing truck, but the absence of any warning light on it. *Certainly it cannot be said, as a matter of law, that, under the circumstances, plaintiff should have stopped."* (Emphasis mine.)

And, in Thompson v. Byers Transp. Co., 362 Mo. 42, 239 S.W.2d 498, loc.cit. 500, the Supreme Court of Missouri said:

"Plaintiff was not contributorily negligent as a matter of law on the theory he was traveling at a speed which prevented his stopping within the distance his headlights revealed · objects ahead of him in the circumstances of record."

In Bedsaul v. Feeback, 341 Mo. 50, 106 S.W.2d 431, loc.cit. 434, the Supreme Court of Missouri said on the subject of blinding lights as follows:

"To say that a driver of a car is guilty of negligence, *as a matter of law, every time he fails to slacken the speed of his car, or stop, when his visibility is only momentarily shortened by the lights of an approaching automobile, is indeed a dangerous doctrine.* There seems, however, to be a conflict of authority upon this question. \* \* \* Circumstances, however, alter cases." (Emphasis mine.)

■ In the still later case of Riley v. Young, Mo.App., 218 S.W.2d 805, loc. cit. 808, the St. Louis Court of Appeals announced acceptable doctrine as follows:

"There is no doubt of the duty of the operator of a motor vehicle to keep a careful or vigilant watch ahead for other persons or vehicles on the highway; and *for a motorist to fulfill this duty he must look in such an observant manner as to enable him to see and discover such conditions as one in the exercise of the highest degree of care for the · safety of himself and others would*

*be expected to see under like or similar circumstances.* \* \* \* *Such duty, being fixed, uniform, and continuous, is in that sense constant;* \* \* \*." (Emphasis mine.)

■ In Lemonds v. Holmes, Mo.Sup., 236 S.W.2d 56, loc.cit. 60, 22 A.L.R.2d 418, the late Judge Vandeventer of the Springfield Court of Appeals said:

"A motorist is not required to slow down or stop, merely because headlights are advancing in his direction. It is only when he has knowledge, or by the exercise of the highest degree of care could have such knowledge, that the advancing car is not intending to move to the right, that he must take all reasonable precautions to avoid a collision."

■ It is obvious from the foregoing that the driver of the truck in the case here, being far away from urban improvements, and where the traffic was exceedingly light at the hour the accident occurred, should have suspected the presence of persons or other vehicles near the point where he saw the standing or slowly moving westbound car. It should be here stated that many of the jurisdictions hold that an automobile driver is obliged to stop where there is interference with his vision so that he cannot comply with the rule incumbent upon him, to use the highest degree of care. Observe the headnote of 60 C.J.S., Motor Vehicles, § 294, p. 697:

"It is the duty of one driving a motor vehicle at night or whose vision is interfered with for any reason to exercise care commensurate with the danger of injury which might result therefrom, and to have · his vehicle under control. *It is his duty to stop when he is entirely unable to see the way ahead of him, but the existence of conditions interfering with his view does not necessarily require him to stop."* (Emphasis mine.)

In the circumstances in this case, the court would be justified in declaring that

the driver of the truck was negligent as a matter of law. However, the facts justify a finding that he was negligent.

■ 3. There can be no question on this record but that the driver of the passenger car in which the passengers were sleeping was negligent. Furthermore there can be no question but that Myrtle Stafford, the plaintiff in case No. 7770, was negligent. Her negligence, however, could not be imputed to the children. Chawkley v. Wabash R. Co., 317 Mo. 782, 297 S.W. 20, loc.cit. 27, where the Supreme Court of Missouri specifically held that the negligence of parents cannot be imputed to the children. The court said:

"The doctrine of imputed negligence no longer obtains. Neff v. City of Cameron, 213 Mo. 350, 111 S.W. 1139, 18 L.R.A.,N.S., 320, * * *."

However, the court said further:

"The general rule is that, when a parent brings an action in his own name for the death of an infant child, he must be denied recovery if his own negligence contributed to the accident which resulted in the child's death, provided the defendant was negligent only, and did not wantonly inflict the fatal injury."

■ In this case, the mother of the children involved in the accident was negligent. During the long night she was being driven around in a worn out and an unfit automobile. She was drinking. She knew the hazards inherent in the automobile wherein she was a passenger and in which she placed her children. She knew, moreover, there was an element of irresponsibility in the driver of the automobile and in other passengers who accompanied her. Clearly, under the above authorities, she is not entitled to recover for the death of her infant son, nor for the damages that might have otherwise accrued to her from the injuries to her two infant daughters. However, she did not incur any expense in respect of them.

■ 4. The injuries sustained by Eula Mae Stafford, in case No. 7771, were not very great. She was paid $1,000 by the insurance carrier of the owner of the car in which she was riding. She had a broken clavicle and lost very little time from school. Two Thousand Dollars additional would be adequate compensation for her.

■ In the case of Mary Virginia Stafford, No. 7772, a more serious question arises: She is, according to undisputed testimony, permanently paralyzed. She is very young and will be helpless the balance of her life. She will be incapable of marriage, or taking part in the affairs of life which appertain to a normal person. Whether in hospitals or out of hospitals, she will be the subject of medical care and nursing. The amount allowed her should be a considerable sum, otherwise she would become a public charge. She should be awarded $150,000. She has been paid $5,000, so the judgment should be for $145,000.