Emma MULLINS, Adm'x of Estate of David Mullins, Deceased, Appellant,

v.

William Thomas BULLENS et al., Appellees.

Court of Appeals of Kentucky.

Oct. 9, 1964.

Charles R. Coy, James S. Chenault, Richmond, for appellant.

George T. Ross, Richmond, for appellees.

DAVIS, Commissioner.

Just after midnight in June, 1961, David Mullins was killed when he was struck by an automobile, owned by appellee Bullens, driven by appellee Gatliff. Bullens was riding in his car at the time of the accident. Upon trial of this wrongful death action (KRS 411.130) a jury returned a verdict for appellant for $21,197, which included funeral expenses and damages for decedent's automobile. Following entry of judgment upon the verdict, the trial court sustained appellees' timely motion for judgment n. o. v. The n. o. v. motion was coupled with an alternative motion for new trial. CR 50.03. The court granted the n. o. v. motion, and further ordered that in the event the court's ruling for judgment n. o. v. should be reversed, then the appellees' motion for new trial is sustained. Appellant challenges the rulings of the trial court on these grounds: (1) Decedent was not as a matter of law guilty of contributory negligence, (2) the doctrine of "last clear chance" requires submission of the case to a jury, (3) appellees' negligence precludes their reliance upon "sudden emergency doctrine," (4) proof of appellee driver's intoxication reflects such wanton conduct as to deprive appellees of the defense of contributory negligence, (5) decedent did not as a matter of law assume the risk when making repairs to his disabled car, and (6) the conditional granting of a new trial was error.

About 11:45 p. m. on June 16, 1961, the decedent, accompanied by his brother and Frank Cope, left Richmond en route for their homes in Rockcastle County. All of them had had some beer to drink, although the quantity consumed is in dispute. When they had gone about four miles the hood on decedent's car came up so as to obstruct the view of the driver. Thereupon decedent brought the car to a stop—parking it with its left wheels on the traveled portion of the highway in its travel lane. The parking and tail lights were burning (according to evidence for appellant). Decedent and the other occupants of his car alighted from it and removed the hood from the vehicle. For about fifteen minutes they were in the process of trying to place the hood into the trunk of the car when appellee Gatliff, driving the automobile of appellee Bullens, drove the car so as to strike decedent, fatally injuring him. The appellees were also coming from Richmond and headed in the same direction as decedent.

Appellee Gatliff said that he first saw decedent's car when it was 125 to 150 feet in front of him. According to Gatliff, his headlights were working properly. The evidence for appellant reflects that the appellee's car laid down skid marks of 97 feet before colliding with Mullins and his parked car. After the impact, appellee's car crashed into a tree just off its left side of the highway; the tree is located about forty feet beyond the point of impact. The Mullins car was knocked about thirty feet forward as the result of the collision.

There was evidence that blood samples taken from appellee Gatliff shortly after the accident indicated blood alcohol content of 0.13% by weight. Similar tests revealed 0.15% blood alcohol content for appellee Bullens. A test performed upon the corpse of Mullins, under circumstances challenged by appellant as failing to show that proper precautions were taken for accuracy, indicated a blood alcohol content of 0.21%.

Competent medical evidence disclosed at the trial that an individual of comparable size with those involved in the case will eliminate alcohol, in terms of blood weight, at the rate of 0.015% per hour. Using this factor, the witness deposed that appellee Gatliff's blood weight alcohol content was 0.15% at the time of the accident. Evidence was adduced that the driving ability of all persons will be impaired when the blood alcohol content is as high as 0.15%. See KRS 189.520(4) as to effect of various percentages in criminal prosecutions.

The accident occurred in a designated 35 mph speed zone. It is noted that some evidence was heard that the zone was designated as having a speed limit of 50 mph; the court submitted to the jury the question whether it was 35 mph or 50 mph. The weather was clear; the road was a dry bituminous blacktop concrete pavement. A qualified engineer, particularly trained in the matter of relating required stopping distances to the speed of automobiles, gave evidence relating to the required stopping distance for appellee's car. According to that evidence, the car of appellee would have come to a dead stop just as it reached decedent's car assuming a speed of 45 mph coupled with the skid mark of 97 feet. According to the same witness, under the prevailing conditions, if traveling at 35 mph, the car of appellee would have stopped after 57 feet of skidding—this, of course, would have left the car forty feet short of striking the decedent or his car. Appellee Gatliff testified that he was driving 46 mph when he first saw decedent's car, which was then 125 to 150 feet ahead of him. Gatliff said that the headlights on the Bullens car

were functioning properly, but it was not developed whether they were on high or low beam. Appellee Gatliff had 800 feet of unobstructed vision to decedent's car after topping a grade in the highway. Conversely, decedent could have observed the approach of appellee's car during the same distance.

■ We are of the view that the decedent was guilty of contributory negligence as a matter of law; hence, it was error to submit the question of his contributory negligence to the jury. We are mindful that KRS 189.450(1)(a) provides that a vehicle may be stopped or left standing on the main traveled portion of a highway when the vehicle "has been disabled while on the * * * highway in such a manner and to such extent that it is impossible to avoid the occupation of the main traveled portion or impracticable to remove it from the highway until repairs have been made * * *." However, under the circumstances of this case we hold that the disabled condition of decedent's car was not of such nature as to warrant its being left standing in the highway for the nearly fifteen minutes between its first stopping and the collision. The quoted language of KRS 189.450(1)(a) evinces the principle that the nature of the car's disablement must be such as to make it "impossible" or "impracticable" to get the car off the road. We are not holding that it was a violation of the statute to stop the car momentarily on the highway when the hood flew up and obstructed the driver's vision— but we do hold that the nature of the difficulty with the car was neither of the extent nor type warranting stopping on the highway for such an extended time. The emergency simply did not last that long. The evidence is uncontradicted that the car could have been driven off the traveled portion of the road with a bare minimum of care. Under these conditions, decedent was in violation of KRS 189.450(1) in permitting his car to partially block the highway. We conclude that decedent's violation of the statute, under the circumstances here, was negligence *per se*. The exception provided

by KRS 189.450(1)(a) applied only so long as it was necessary for the Mullins car to be left standing on the pavement. The statute is intended to protect motorists (including appellee Gatliff) against the risk of the type of harm which occurred here. See treatment of effect of statutory violation as negligence in Ross v. Jones, Ky., 316 S.W.2d 845, and Prosser's Law of Torts, 2nd Ed., p. 161, et seq.

 Moreover, it was negligence for decedent to remain standing on the highway, in an obviously perilous place, under the conditions at bar. Carlisle v. Reeves, Ky., 294 S.W.2d 74. We believe it beyond cavil that decedent would be regarded contributorily negligent as a matter of law had he simply stood in the highway, where he did stand, had there been no automobile there. We cannot perceive that the presence of the illegally parked automobile diminished his negligence, even though there was evidence that the tail lights of the car were on.

 It is our conclusion, however, that the appellant was entitled to the jury determination of whether recovery is due under the last clear chance doctrine. We need not embark upon renewed consideration of the last clear chance cases as to the effect of peril which *is* discovered vis-a-vis peril which *should have been* discovered. The facts before us show that appellee Gatliff discovered decedent's car at least 125 to 150 feet ahead. There was no oncoming traffic confronting Gatliff. For the appellant it was shown that had Gatliff been driving at 45 mph (he testified he was traveling 46 mph) the vehicle would have come to a stop after sliding 98 feet. At 35 mph, it would have stopped in 57 feet—40 feet short of decedent. There is no showing for appellees why Gatliff was unable to go around the decedent's car. The subject is thus treated by Gatliff in evidence, on cross-examination:

"D64 How far did you see the Mullins car ahead of you for the first time?

"A A hundred and twenty-five to fifty feet.

"D65 From 125 to 150 feet, and what did you do when you saw the car?

"A Throwed the brakes on as hard as I could.

"D66 Was anything coming from the opposite direction?

"A No.

"D67 Did you make any effort to turn your car to the left?

"A I made an effort.

"D68 And it wouldn't turn?

"A No."

Clearly Gatliff is in no position to urge that antecedent negligent speed by him prevented his driving to his left to safely pass the decedent and his car—because Gatliff disclaims antecedent exorbitant speed. We believe the jury had a right to evaluate the conduct of Gatliff when he testified, "I made an effort" to turn to the left and the car would not turn. We deem Riley v. Hornbuckle, Ky., 366 S.W.2d 304, dispositive of the question of last clear chance here.

 Appellant objected to a sudden emergency instruction given by the trial court. The argument is pressed here that the negligence of appellees precludes this defense. We hold that no sudden emergency instruction should have been given, nor should one be given upon another trial of this case if the evidence is substantially the same. KRS 189.040(3)(a) required Gatliff to have head lights of sufficient intensity to reveal persons and vehicles at least 350 feet ahead (with certain exceptions not pertinent here). Accepting Gatliff's testimony that he first saw the Mullins car 125 to 150 feet ahead, it amounts to admission that either his head lights were inadequate, or he was derelict in his lookout duty. Premising the test on Gatliff's duty to see the

decedent and his car 350 feet ahead, we believe that distance precludes any thought of sudden emergency. Since he failed to see until 125 to 150 feet from the decedent's car, for this test, there was such faulty look-out for 200 to 225 feet to foreclose a claim of sudden emergency. One may not create an emergency by his own negligence and then take defensive refuge therein. Ellis v. McCubbins, 312 Ky. 837, 229 S.W.2d 992.

Appellant argues that the negligence of Gatliff was so gross as to amount to wanton misconduct, thereby depriving appellees of the defense of contributory negligence. In support of this position, our attention is directed to Bickel v. Bennett, 267 Ky. 232, 101 S.W.2d 943, and Basham v. White, Ky., 298 S.W.2d 316.

█ We think one answer to this question lies in the fact that, upon the trial the issue of gross negligence as a basis for punitive damages was submitted to the jury —at the behest of the appellant. The jury resolved that issue adversely to appellant by returning its verdict for compensatory damages only. CR 59.01 authorizes the granting of a new trial "on all or part of the issues." There is no basis made evident wherein any purpose is to be served by a re-trial of the gross negligence issue. Clearly there was sufficient conflict in evidence to make a jury issue of whether the negligence, if any, was ordinary or gross. Therefore, we limit a new trial herein to the issue of simple negligence. See Clay CR 59.01, Comment 4.

What has been said obviates necessity for discussion of assumption of risk and propriety of granting a conditional new trial.

█ We decline consideration of certain claimed errors in instructions as presented in brief for appellees. No cross-appeal has been filed; these claimed errors are not before us for review. CR 74; Lainhart v. Rural Doxol Gas Co., Ky., 376 S.W.2d 681.

The judgment is reversed for proceedings consistent with the opinion.