SERVICE LINES, INC., et al., Appellants,

v.

Thomas A. MITCHELL, Ancillary Administrator, etc., et al., Appellees.

Court of Appeals of Kentucky.

April 28, 1967.

Rehearing Denied Nov. 10, 1967.

Frederick E. Nichols, Earle M. Nichols, Nichols & Nichols, Madisonville, for appellants.

Maubert R Mills, Mills, Spain & Mitchell, Madisonville, Rogers, Howard, Redden & Mills, Birmingham, Ala., for appellees.

STEINFELD, Judge.

This is an appeal from a judgment rendered in favor of the Ancillary Administrator of the estate of two infants who were killed when the disabled automobile in which they were passengers was struck from the rear by a tractor-trailer truck owned by the appellant, Service Lines, Inc., and driven by appellant, Leon Locke.

The collision occurred about 10 o'clock on the night of June 12, 1964, on U. S. Highway 41–A in Hopkins County about 13 miles west of Madisonville, Kentucky. This highway was one of the most heavily traveled in western Kentucky and was the main route from St. Louis, Missouri to Nashville, Tennessee. The collision occurred near the center of a stretch of road which was straight and level for almost .7 of a mile. The paved portion is about 18 feet wide and is divided into two driving lanes. There is conflicting testimony (which we will discuss later) relating to the condition, width and angle of the shoulders of the highway. It had rained a short time before the accident and a mist caused poor visibility.

The automobile belonged to, and was driven by, James L. Johnson. His wife and

their three children were with him. They were traveling eastwardly and had entered a section of the highway, the grade of which is gradually downward, when the motor of the automobile began to operate improperly. Mr. Johnson adjusted various controls in an effort to cause the car to resume proper operation. These efforts continued for approximately .4 of a mile, when finally the car came to a complete stop in the east-bound traffic lane with its left wheels approximately 15 inches south of the center line of the road. Mrs. Johnson and the youngest of their three children were riding in the front seat with Mr. Johnson. Debra Jean and James Anthony, respectively ages seven and three, were in the rear seat.

Johnson and his wife immediately got out of the car. He raised the hood and with Mrs. Johnson holding a cigarette lighter to illuminate the motor, Mr. Johnson attempted to start the car. His efforts continued without success for about 15 minutes. They tried to obtain aid from passing motorists but none stopped. During all of this time, according to the testimony of Mr. and Mrs. Johnson, the parking lights on the automobile were lighted and clearly visible.

Leon Locke had been a driver for Service Lines, Inc. for almost 17 years. On his truck route between Nashville and St. Louis, going in both directions he had traversed the road at that point about six days per week for the previous 15 years. On this fatal night, between 10 and 15 minutes after the Johnson car stopped, he was driving the tractor-trailer on that part of the highway in an easterly direction in his usual and customary manner traveling about 40 miles per hour. He testified that there were a number of motor vehicles coming toward him and that each of them had bright burning headlights and that the headlights on his tractor were burning. He claims he did not see the disabled automobile parked on the highway until he was only approximately 50 to 75 feet from it. He blames his failure to see the Johnson car

on the headlights which were coming toward him and which blinded him momentarily, but all had passed by the time Locke saw the Johnson car. He testified that he could not stop suddenly because the tractor-trailer would have "jack knifed" and turned over on the car. To avoid colliding with the Johnson car, he braked slightly and turned to the northern side of the highway and attempted to go around it. The tractor and the front part of the trailer cleared the automobile but the trailer at a point about 10 feet from its front end collided with the Johnson car dragging it 166 feet down the road. Debra Jean and James Anthony were killed instantly. Neither the infant on the front seat nor the parents who were out of the car were injured.

Immediately before the collision Mrs. Johnson, who was on the right side of the vehicle, started moving from the front toward the rear. Mr. Johnson saw the truck and realized that a collision was imminent, therefore, he made a dive for Mrs. Johnson and they both went out on the shoulder on the south side of the road and into the ditch.

There is some conflict in the testimony as to whether or not the Johnsons were residents of Indiana or Alabama, but it is agreed that they were non-residents of Kentucky. Thomas A. Mitchell made application to the County Court of Hopkins County, Kentucky, and by orders entered in that tribunal he was appointed as Ancillary Administrator of the estates of the two infants. Suit was brought in the name of the Ancillary Administrator for the two estates. After a lengthy trial the jury rendered a verdict in the amount of $50,000.00 for the estate of Debra Jean and a verdict for a like amount for the estate of James Anthony Johnson. Judgment was entered for those amounts against Locke and Service Lines, Inc. Both appeal. The appellants assign a number of alleged errors to support their claim that the jugment should not stand and that the two estates should have no recovery.

The first point asserted is that the appointment of the Ancillary Administrator is void because there is no primary administrator, and that he has no standing in court. Appellants also claim that by reason of the provisions of KRS 395.170 the estate of a non-resident may proceed only in an action brought by, and in the name of the executor or administrator appointed in the jurisdiction of the residence of the person whose estate is seeking the recovery.

■ The term "Ancillary Administrator" serves only to distinguish that representative from the primary administrator. 34 C.J.S. Executors and Administrators § 989, p. 1234. This court has approved the appointment of an Ancillary Administrator without the prior appointment and qualification of a primary administrator. Trotta's Adm'r v. Johnson, 121 Ky. 827, 831, 90 S. W. 540; Stell v. Williams' Adm'r, 233 Ky. 441, 26 S.W.2d 8. We see no reason to deviate from this rule which has been generally adopted. 21 Am.Jur. 853, section 857.

■ We find no merit in the contention that an action for wrongful death of a non-resident may proceed only in the name of the executor or a primary administrator under the provisions of KRS 395.170. The right of an Ancillary Administrator to sue is clear. Whisler v. Allen, Ky., 380 S.W.2d 70; Jewell Tea Company v. Walker's Adm'r., 290 Ky. 328, 161 S.W.2d 66; Chesapeake & Ohio Railway Co. et al. v. Ryan's Adm'r., 183 Ky. 428, 209 S.W. 538; Brown's Adm'r v. Louisville and Nashville Railroad Co., 97 Ky. 228, 30 S.W. 639.

■ Secondly, Locke and his employer vigorously argue that Locke was guilty of no act of negligence and that the motion they made for a directed verdict at the close of evidence on behalf of the two estates was overruled erroneously. One of the facts in dispute is the speed of the truck. Locke testified that when he was blinded by the lights he took his foot off of the accelerator and the truck slowed down to at least 35 miles per hour. The only testimony of greater speed was from Johnson who said it was traveling 60 or 70 miles per hour; however, this evidence has little probative value for he was observing an oncoming vehicle in the nighttime with little opportunity to fairly judge its speed. Bowling Green-Hopkinsville Bus Co. v. Edwards, 248 Ky. 684, 59 S.W.2d 584; Chesapeake & O. Ry. Co. v. Prater's Adm'x, 269 Ky. 174, 106 S.W.2d 625; Roberts v. General Industries, Inc., Ky., 320 S.W.2d 619. Locke stated that the Johnson car was from 50 to 70 feet ahead of him when he first saw it and he tried to maneuver the truck to the left to go around the car. The automobile was dragged 166 feet. Before coming to a stop the truck proceeded an additional 53 feet with the trailer sliding sideways and partly overturned for the last 30 feet. There was sufficient evidence to submit to the jury the question of whether Locke, when passing through the glare of blinding headlights was violating duties imposed on him. In Duncan v. Wiseman Baking Company, Inc. et al., Ky., 357 S.W.2d 694 we said:

"The modern rule, generally accepted, is that a motorist so blinded is not required to stop instantly but his duty is determinable by the standard of ordinary care under the particular circumstances, although the rule is subject to a number of exceptions. A motorist is not entitled to proceed as if he could see ahead, but is required to take additional precautions for the safety of himself and others which are commensurate with the existing danger, such as slackening his speed and bringing his car under such control that he is able to stop it in time to avoid any discernible object in the road ahead or within such distance as he can at all times see what is ahead of him. 5 Am. Jur., Automobiles, §§ 332, 707, 1072; 60 C.J.S. Motor Vehicles, § 294; Blashfield, Cyclopedia of Automobile Law, § 744; Notes 22 A.L.R.2d 300 et seq.

"Our later decisions are, generally, to the same effect. City of Providence v. Young, 227 Ky. 690, 13 S.W.2d 1022;

Commonwealth v. Daniel, 266 Ky. 285, 98 S.W.2d 897; Knight v. Silver Fleet Motor Express, 289 Ky. 661, 159 S.W.2d 1002; Wilson v. Dalton's Adm'r, 311 Ky. 285, 223 S.W.2d 978; Harris v. Luster, Ky., 259 S.W.2d 489; Slusher v. Brown, Ky., 323 S.W.2d 870. Several of these cases and others are reviewed in Ashton v. Roop, Ky., 244 S.W.2d 727, and notice is taken of some inconsistencies. * * *

"It seems to us the instruction should have been that when (he) was blinded or his vision of the highway was obscured by the headlights of the Murray car, it was his duty to take such protective measures for his own safety as an ordinarily prudent driver would take under the same or similar circumstances. The jury may regard that precaution to have required sounding the horn or slackening speed or even stopping, according to the particular circumstances of a case, * *."

Also see Morrison v. Hibbard, Ky., 375 S.W.2d 685; Hisaw et al. v. Hendrix et al., 54 N.M. 119, 215 P.2d 598, 22 A.L.R.2d 285; Hughes v. Great American Indemn. Co. (CA 5th La.) 236 F.2d 71, cert den 352 U.S. 989, 77 S.Ct. 386, 1 L.Ed.2d 368; Stafford v. Freightways, Inc. (DC Mo) 117 F.Supp. 903; Shields v. Buffalo County, 161 Neb. 34, 71 N.W.2d 701; Badurina v. Bolen, 114 Ohio App. 478, 183 N.E.2d 241, 19 Ohio Ops.2d 469; Egan v. Boyce, 83 R.I. 178, 114 A.2d 402; Superior Steel Products Corp. v. Zbytoniewski, 270 Wis. 245, 70 N.W.2d 671.

There was conflicting evidence as to whether the rear lights were burning on the Johnson automobile and should have been seen by Locke. The question of the adequacy of the headlights on the truck was another issue. These matters were properly presented to the jury.

The third contention of appellants is that the parents of the Johnson children were contributorily negligent as a matter of law. KRS 411.130(2) (d) precludes negligent parents from obtaining a recovery for a tortious act to the child. Emerine v. Ford,

Ky., 254 S.W.2d 938; Bays v. Cox' Adm'r, 312 Ky. 827, 229 S.W.2d 737; Caldwell v. Jarvis, 299 Ky. 439, 185 S.W.2d 552. They predicate their argument of parental negligence on two theories—first that Johnson should have removed his disabled automobile from its position on the highway to a place where as much of the car as was reasonably possible would be off of the paved portion of the road; secondly, that the three children should have been taken out of the car.

The paved side of the road on which the Johnson car was traveling was approximately nine feet in width, and the shoulder varied from four to six feet. At the place where the car stopped the evidence indicates that the shoulder had a width of four feet. There was a drainage ditch beyond the shoulder and then swampy land.

Johnson testified that as the automobile moved forward with the motor off he looked for a place to get off the road but saw none. After the car stopped he observed the shoulder and found that it was covered with grass and weeds averaging two feet in height. He admitted that he made no examination to determine whether or not, with reasonable safety, the car could have been moved on to that shoulder. Testimony of another witness showed that at least a portion of the shoulder of the road could have been used, and later was used for vehicles to move around the wreck.

KRS 189.450(1) requires that a vehicle not "be left standing upon the main traveled portion of the highway" with certain exceptions, one which is as follows:

"(a) A vehicle that has been disabled while on the main traveled portion of such a highway in such a manner and to such extent that it is impossible to avoid the occupation of the main traveled portion or impracticable to remove it from the highway until repairs have been made or sufficient help obtained for its removal * * *".

Appellants contend that Johnson violated the statute in that the vehicle he was driving

and the surrounding circumstances did not bring it within the exception just quoted. We do not agree. The general rule is stated in 60 C.J.S. Motor Vehicles § 332, p. 775 as follows:

"* * * it is generally the rule that where a vehicle becomes disabled to such an extent that it is impossible to avoid stopping and temporarily leaving it in an improper place, or where it is impossible or impracticable to move it to such a position on the highway as would be proper in a case of ordinary stopping or parking, it is not negligence or negligence per se to permit it to stand out toward the center of the highway, provided proper precautions. are taken in other respects, and the disablement did not occur as a result of the operator's negligence."

We have adopted that rule. American Fidelity and Casualty Co. v. Patterson, Ky., 243 S.W.2d 472; Branch v. Whitaker, Ky., 294 S.W.2d 948. In Banner Transfer Company v. Morse, Ky., 274 S.W.2d 380, we said:

"As we construe the statute, a disabled vehicle must be removed from the highway unless it is impracticable to do so. * * * It was for the jury to determine whether defendant's driver was negligent in failing to remove, or attempting to remove, the truck from the highway."

Appellants rely upon Mullins v. Bullens, Ky., 383 S.W.2d 130, but that case, is not comparable. In Bullens the hood of the vehicle had come loose. The car was left standing in the traveled portion of the road while the occupants removed the hood and attempted to place it into the trunk when the accident occurred. That vehicle was not disabled. None of the other cases cited by appellant on this question causes us to believe that we should deviate from the rule above quoted from Banner Transfer Company v. Morse, supra.

▪ We do not find that the failure of Johnson to move the disabled vehicle is negligence as a matter of law. Remmenga v. Selk, 150 Neb. 401, 34 N.W.2d 757.

▪ Were Mr. and Mrs. Johnson as a matter of law, negligent in permitting the children to remain in the disabled automobile? Appellants cite Acres v. Hall's Adm'r, Ky., 253 S.W.2d 373, in support of their argument that they were. We find the circumstances in the Acres case to be entirely different, for in that instance there was no emergency. The parents selected a stopping place on a bridge and failed to properly supervise their four year old daughter. The Johnsons were confronted with two dangerous conditions. There was obvious danger in permitting the children to remain in the car which was parked in the nighttime on the paved portion of the highway. Obviously, it also was dangerous to remove three babies to a narrow shoulder of a road, grown up in weeds, and in close proximity to heavy traffic passing by at high speed. It is universally held that where a person is confronted with two dangerous conditions he is not required to select, in an emergency, the one which on mature reflection might appear to be the least dangerous. Agee v. Hammons, Ky., 335 S.W.2d 732, 735; Williams v. Ehman, Ky., 394 S.W.2d 905, 907. In Cyclopedia and Auto Law and Practice, (Blashfield) Volume III, page 388, section 2002 it is said:

"* * * and the fact that, confronted with the peril created by the situation the course which he elects to pursue may not be the wisest in the light of cool deliberation does not render him negligent as a matter of law in choosing it." Citing Brien v. Detroit United Ry. (DC Mich.) 247 F. 693; Grissom v. City of Seattle, 123 Wash. 131, 212 P. 264, but see Lawrence v. Fitchburg & L. St. Ry., 201 Mass. 489, 87 N.E. 898.

Such a situation existed in Flaherty v. Collins, 318 Mass. 153, 61 N.E.2d 12 in which there were two passengers in a burning taxicab. One jumped from it but the other remained until it came to a stop. The

Massachusetts Court held that the passenger who jumped was not guilty of negligence, as a matter of law, but that the question of proper care was for the jury. The law in this state is the same.

 Service Lines and Locke complain that the highway patrolman was permitted to testify that he observed, and that a photograph was admitted in evidence which showed that the left front parking light of the Johnson car was burning. He did not arrive at the scene of the accident until about 30 minutes after it occurred. The photograph was taken of the wrecked automobile before it was moved. We find no merit in the objection to the introduction of that testimony or the photograph. Young, Adm'r v. De Bord et al., Ky., 351 S.W.2d 502.

 The officer was asked by the appellants to state whether in his opinion, from what he observed, if the Johnson car had been parked partially off the road and on the shoulder or at least half of it, there would have been a collision. It was proper for the court to refuse to permit the officer to express this opinion for this would invade the province of the jury. Dixie Ice Cream Co. v. Ravenna Grocery Co., 306 Ky. 182, 206 S.W.2d 824; Johannes v. Edward G. Becht L. Co. (Mo.) 274 S.W. 377. In Moore v. Norwood, 41 Cal.App.2d 359, 106 P.2d 939 it was said:

"In other words, whenever the question to be determined is the result of the common experience of all people of ordinary education, or such result is to be inferred from particular facts, such inference must be drawn by the jury and not by the witness."

Also see 8 Am.Jur.2d 535, Section 983.

Other objections to the exclusion of testimony have been examined. It is our opinion that the rejection was proper.

The court clearly, carefully and properly instructed the jury of the duties of the driver of the truck with respect to its oper-

ation and the statutory requirements regarding headlights. Appellants complain that there was undue emphasis on some of these matters for they were not in issue. We find no merit in this contention (Sparks v. Doe, Ky., 379 S.W.2d 252) and no error in the instructions.

The judgment is affirmed.

WILLIAMS, C. J., and MILLIKEN, OSBORNE, and PALMORE, JJ., concur.