RENDERED:  MAY 6, 2022; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0587-MR


ANGELA MASON IN HER CAPACITY
AS EXECUTOR OF THE ESTATE OF
NORMA CATHERINE
MASON-STIKES, DECEASED                                            APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.           HONORABLE AUDRA J. ECKERLE, JUDGE
ACTION NO. 20-CI-006418


HOWARD L. STIKES, BOTH
INDIVIDUALLY AND IN HIS CAPACITY
AS ADMINISTRATOR OF THE
ESTATE OF WILLIAM T. STIKES, JR.,
DECEASED; MARY T. AUSTIN;
NORMA JEAN STIKES;
AND WILLIAM T. STIKES                                            APPELLEES


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; CETRULO AND GOODWINE,
JUDGES.

CETRULO, JUDGE: Appellant Angela Mason ("Executor Angela"), in her capacity as executor of the estate of her mother, Norma Catherine Mason-Stikes ("Norma"), appeals the Jefferson Circuit Court opinion and order granting the motion to dismiss for failure to state a claim of Appellee Howard Stikes ("Administrator Howard"). Administrator Howard filed the motion both individually and in his capacity as administrator of the estate of his father, William T. Stikes, Jr. ("Decedent").

## I.  FACTUAL AND PROCEDURAL HISTORY

Decedent and Norma were married in 1992 in Jefferson County, Kentucky. The couple entered a post-nuptial marriage agreement on June 26, 2006, after concerns arose regarding Decedent's gambling debt. A few weeks later, on August 18, 2006, the couple amended the post-nuptial marriage agreement (as amended, the "Marriage Agreement") to clarify Norma's interest in Decedent's Army disability, work pension, and social security, *i.e.*, that she was entitled to those benefits.

In 2011, Norma was diagnosed with Alzheimer's dementia and her health began to deteriorate. After a series of accidents and hospitalizations, Norma and Decedent moved to an assisted-care facility in Virginia, where Norma's family lived. A few months after the move to Virginia, Decedent moved back to Jefferson County alone, for reasons that are not established in the record. Despite the change

in living arrangements, the couple never legally separated, and the marriage remained intact under the law.

On October 31, 2019, Decedent passed away in Jefferson County. Decedent's son, Administrator Howard, incorrectly listed Decedent as "widowed" on the death certificate and failed to list Norma as the surviving spouse. Due to those errors, it is claimed that Norma did not receive the benefits and pension to which she was entitled under the Marriage Agreement. Once Norma's family learned of the mistake, they asked Administrator Howard to amend the death certificate to correctly state that Decedent was married, and the surviving spouse was Norma. Administrator Howard initially refused to do so but ultimately amended the death certificate to state Decedent was "married but separated" and listed Norma as the surviving spouse.

In January 2020, Administrator Howard petitioned to open his father's estate and listed three accounts: L&N Credit Union $1,700; Minnesota Life Annuity $80,000; and Prudential $70,000. Then, in June 2020, the Jefferson County District Probate Court appointed Administrator Howard as administrator of Decedent's estate.

Two months later, in August 2020, Norma filed a written statement of claim against Decedent's estate claiming spousal survival benefits, per the Marriage Agreement, including monthly payments of $954 for Army disability;

-3-

$850 for work pension; and $1,161 for social security, all of which it is believed were partially contained in the accounts opened for Decedent's estate. Unfortunately, Norma then passed away. Her daughter, Executor Angela, was substituted as the party for the claim. A month later, Administrator Howard denied the claim, and a month after that, Executor Angela filed a verified complaint with the Jefferson Circuit Court.

In addition to the facts developed above, the verified complaint stated that Executor Angela had received a letter from Minnesota Life acknowledging that payments were being made to the L&N Federal Credit Union account and requesting acknowledgment that Norma received her spousal survivorship benefits payment from that account. The verified complaint further contended that Norma had believed the Prudential account held a portion of Decedent's work pension. The verified complaint contained four counts: a request for declaratory judgment that the marriage agreement was valid and should be enforced;[1] a claim of fraud for stating Decedent was widowed on the death certificate; a claim of wrongful rejection of Executor Angela's claim against Decedent's estate; and a request for declaratory judgment that certain assets claimed by Administrator Howard should not be part of the probate estate.

---

[1] The circuit court concluded that the Marriage Agreement was valid and should be enforced, which Executor Angela does not appeal here, and consequently, we do not address.

-4-

In response, Administrator Howard filed a motion to dismiss for failure to state a claim and alleged Executor Angela's appointment as executor of Norma's estate was void, so she was not permitted to bring the action. Administrator Howard claimed that legal documents suggested Norma was a resident of Virginia; therefore, her will could not be admitted to probate in Kentucky. Consequently, he asserted, a Jefferson County probate judge could not appoint an executor for Norma. Due to those alleged shortcomings, Administrator Howard claimed that Executor Angela lacked standing to bring the claims against Decedent's estate. As a result, Administrator Howard alleged this matter was not justiciable under the Kentucky Constitution and therefore lacking proper subject matter jurisdiction.

Additionally, Administrator Howard alleged the claims were not justiciable because there was no controversy; the only asset that he had collected at that time was a partial reimbursement for Decedent's funeral. Further, he claimed that he intended to comply with the "Agreement of July 26, 2006"[2] so, he argued, Executor Angela's claims were not yet ripe. As for Executor Angela's fraud claim,

---

[2] The circuit court opinion noted that Administrator Howard promised to comply with the "Agreement of July 26, 2006," but at the beginning of that opinion, the court clarified that the July 26, 2006 agreement was amended by the August 18, 2006 letter and would thereinafter be referred to jointly as the "Marriage Agreement." Therefore, it is unclear whether Administrator Howard intended to comply with the full, amended Marriage Agreement. Importantly, the assets in question are outlined in the August 18, 2006 letter, by which it does not appear Administrator Howard explicitly agreed to abide.

Administrator Howard asserted that Kentucky courts did not recognize such action. Further, he alleged the fraud claim was inadequately pleaded and there was no evidence of injury.  He later went even further to allege the fraud claim was altogether waived because the Marriage Agreement contained a waiver of claims related to the couple's "Separate Property."  Finally, Administrator Howard argued the fraud issue was moot because he filed an amendment to the death certificate.

The circuit court granted Administrator Howard's motion to dismiss in March 2021.  The circuit court agreed with many of his arguments and dismissed Executor Angela's claims with prejudice.  The circuit court also confirmed the Marriage Agreement was valid and enforceable.  Accordingly, the court found Section 2 of the Marriage Agreement waived all future claims and bound Norma, as well as her successors in interest (*e.g.*, Executor Angela):

> [Decedent] and [Norma] each hereby waive, release and relinquish any and all claims and rights that either of them may not have, or hereafter acquire, as surviving spouse, heir of the other, or otherwise, in the *Separate Property*[3] of the other, under the present or future laws of Kentucky or any other competent jurisdiction[.]

---

[3] Section 1 of the Marriage Agreement, titled "Separate Property of the Parties," explained what "Separate Property" entailed:  Decedent and Norma

> each exhibited to the other a schedule of his or her individual assets as of the date of [the Marriage Agreement], and said schedules have been fully reviewed and executed by [Decedent] and [Norma] and have been attached hereto and made a part hereof as Exhibits A and B.  These schedules identify substantially the nature, extent and value of all of the independent and separate property owned by each as of the date of [the Marriage Agreement], and each realizes, acknowledges and accepts such values and the methods by which such values were obtained.

> ...
>
> > . . . This Agreement will inure to the benefit of, and will be binding upon, the estates, heirs, beneficiaries, successors, assigns, legal representatives, executors and administrators of [Decedent] and [Norma] and will be governed by, and construed pursuant to, the laws of the Commonwealth of Kentucky.

Marriage Agreement (emphasis added).

According to these provisions, the circuit court found Executor Angela's fraud claims were "barred on their face." The circuit court further found that because Administrator Howard filed an amendment for the death certificate, the issue of fraud was moot. The circuit court explained that even if the issue was not moot, Executor Angela could not establish the elements of fraud because there was no injury and Norma did not rely upon any misrepresentation that resulted in injury.

Next, the circuit court explained that according to its interpretation of Kentucky statutes, probate can occur in the state where a debt is owed (as Executor Angela alleges), but only when the testator had "no known place of residence." KRS[4] 394.140. If the residence is known, the court stated, the will must be probated in the place of residence. The court then appeared to find that place of residence was Virginia. Therefore, the circuit court concluded, Norma's will

---

[4] Kentucky Revised Statute.

should have been submitted to probate in Virginia,[5] and Executor Angela's appointment in Kentucky was void. As such, the court emphasized, Executor Angela had no standing to pursue the action in the circuit court. Executor Angela then filed a motion for reconsideration, which the circuit court denied.

Executor Angela appealed the order dismissing her claims and argued the circuit court erred when it (1) found her appointment as executor was invalid; (2) found her fraud claim was invalid; (3) found no justiciable controversy; (4) found her claim for wrongful disallowance of the claim against Decedent's estate was invalid; and (5) failed to reconsider the dismissal, constituting an abuse of discretion.

## II.   STANDARD OF REVIEW

A motion to dismiss should be granted only where "it appears the pleading party would not be entitled to relief under any set of facts which could be proved in support of his claim." *Pari-Mutuel Clerks' Union of Kentucky* [*Local 541, SEIU, AFL-CIO*] *v. Kentucky Jockey Club*, 551 S.W.2d 801 (Ky. 1977). When considering the motion, the allegations contained in the pleading are to be treated as true and must be construed in a light most favorable to the pleading party. *See Gall v. Scroggy*, 725 S.W.2d 867 (Ky. App. 1987). The test is whether the pleading sets forth any set of facts which – if proven – would entitle the party to relief. If so, the pleading is

---

[5] The circuit court referenced a Virginia statute (Va. Code Ann. § 64.2-443(West 2012)) that states, "A will shall be offered for probate in the circuit court in the county or city wherein the decedent has a known place of residence" and concluded that such language meant a will could not be submitted elsewhere as well. We do not find such language to prohibit an executor from also submitting the will for ancillary administration where property is located outside Virginia. *Denny v. Searles*, 150 Va. 701, 733, 143 S.E. 484, 494 (1928).

sufficient to state a claim. *See* CR[6] 8.01. Since the trial court is not required to make factual findings, the determination is purely a matter of law. *James v. Wilson*, 95 S.W.3d 875, 884 (Ky. App. 2002). Consequently, we review the decision of the trial court *de novo. Revenue Cabinet v. Hubbard*, 37 S.W.3d 717, 718 (Ky. 2000).

*Phillips v. Lexington-Fayette Urban County Government*, 331 S.W.3d 629, 633 (Ky. App. 2010).

## III. ANALYSIS

To determine whether it was proper for the circuit court to dismiss Executor Angela's claims, we must analyze the justiciability of Executor Angela's claims against Decedent's estate and Executor Angela's fraud claims against Administrator Howard.

Administrator Howard argued in his motion to dismiss that Executor Angela's claims against Decedent's estate were not justiciable because she did not have standing and therefore the Jefferson Circuit Court did not have subject matter jurisdiction.[7] The circuit court at least partially relied upon that reasoning when it granted the motion to dismiss. As an initial matter, this Court finds it worthwhile to clarify the different forms of jurisdictional issues under Kentucky law.

---

[6] Kentucky Rule of Civil Procedure.

[7] Secondarily, he argued the claims were not justiciable because there was not an actual controversy. We address that issue below.

We begin our analysis by discussing why standing and lack of subject-matter jurisdiction are not synonymous. The key difference is that subject-matter jurisdiction involves a court's ability to hear a type of case while standing involves a party's ability to bring a specific case. Our predecessor Court quoted, with approval, an opinion of the New York Court of Appeals that held that "subject matter does not mean 'this case' but 'this kind of case.'" More recently, we reaffirmed our adherence to the proposition that subject-matter jurisdiction depends on whether a court has the ability to hear "this kind of case," instead of "this case." As previously mentioned, however, standing focuses more narrowly on whether a particular party has the legally cognizable ability to bring a particular suit. Although the concepts bear some resemblance to each other, standing is distinct from subject-matter jurisdiction.

*Harrison v. Leach*, 323 S.W.3d 702, 705-06 (Ky. 2010) (footnotes omitted).

Here, it does not appear that Administrator Howard is arguing that the Jefferson Circuit Court does not have the authority to hear a claim regarding a contested probate matter. The circuit court does have jurisdiction over that *type* of case, *i.e.*, it does have subject matter jurisdiction over contested probate matters.[8] KRS 24A.120 ("District Court shall have exclusive jurisdiction in . . . [m]atters involving probate, except matters contested in an adversary proceeding. Such adversary proceedings shall be filed in Circuit Court in accordance with the Kentucky Rules of Civil Procedure . . . ."); *see also Fischer v. Jeffries*, 697 S.W.2d

_____

[8] *See also Daugherty v. Telek*, 366 S.W.3d 463, 467 (Ky. 2012) (citation omitted) ("The court has subject matter jurisdiction when the 'kind of case' identified in the pleadings is one which the court has been empowered, by statute or constitutional provision, to adjudicate.").

-10-

159 (Ky. App. 1985). Instead, Administrator Howard appears to be conflating the matters and concluding that because he believed Executor Angela did not have standing then, by extension, the circuit court did not have subject matter jurisdiction. Our caselaw does not allow such a conclusion on its own. His argument in the standing context is better received.

Consequently, the issues before this Court regarding justiciability are (1) whether Executor Angela had standing; and (2) whether there were facts in her verified complaint constituting an actual controversy. We will address these issues in turn.

**Standing**

First, Executor Angela claims she has standing because Kentucky law allows a non-resident's estate to be probated "where there is a debt or demand owing to [her]." KRS 394.140. She further claims that Kentucky caselaw states ancillary administration may be established prior to domiciliary administration when it is implemented "to avoid loss or to prevent injustice, or to subserve some substantial good." *Payne v. Payne*, 239 Ky. 99, 105, 39 S.W.2d 205, 208 (1931). Administrator Howard contends that because Executor Angela did not first submit Norma's estate for domiciliary administration in Virginia (allegedly where it should take place), her ancillary appointment in Kentucky was void.

-11-

Executor Angela explains that she has proper standing to bring these claims because her appointment to executor was valid under KRS 394.140. That statute, titled "Will probated in district court; venue[,]" states:

> Wills shall be proved before, and admitted to record by, the District Court of the testator's residence (if such residence was on a United States Army post, military reservation or fort, it may be proved and admitted to record in the District Court of any county adjacent thereto); *if he had no known place of residence in this state*, and land is devised, then in the county where the land or part thereof lies; *if no land is devised*, then in the county where he died, or where his estate or part thereof is, or *where there is a debt or demand owing to him*.

KRS 394.140 (emphasis added).

Executor Angela relies on the emphasized language above, claiming that because Norma (1) had no known place of residence *in this state*, (2) there was no land devised, and (3) a debt was owed to her – *i.e.*, spousal benefits, as outlined in the Marriage Agreement – the estate was properly proved before a Kentucky court. Executor Angela notes that Kentucky courts have recognized the propriety of appointing an ancillary administrator to pursue a debt or demand owed to a non-resident for over 100 years. *See Hyatt v. James's Adm'r*, 71 Ky. 9, 10, 8 Bush 9, 11, 1871 WL 6581 (1871).

Kentucky's highest court held that a district court "may appoint an administrator for the estate of [a non-resident] decedent . . . if he left assets and debts within the jurisdiction of the court." *Whisler v. Allen*, 380 S.W.2d 70, 71

(Ky. 1964) (citing KRS 395.030; KRS 394.140; *Payne*, 239 Ky. 99, 39 S.W.2d 205, and the collected cases therein). In *Whisler*, similar to here, the district court appointed the executor as ancillary administrator of a decedent domiciled outside of Kentucky. *Id.* at 70. The opposing party challenged the appointment and claimed it was void, but the highest court in Kentucky disagreed, finding the decedent left an estate in Kentucky (*i.e.*, claims for damages), despite his residence in another state, and therefore ancillary appointment was proper. *Id.* at 70-71. While the emphasis in *Whisler* was to determine whether a claim for damages resulting from a fatal auto accident "was sufficient estate on which to grant administration[,]" the case provides a useful recitation of Kentucky's ancillary administration rules concerning "debts or demands." *Id.* at 71.

Importantly, Administrator Howard does not argue that Norma's alleged Kentucky estate is not sufficient to constitute a "debt or demand." Instead, he argues KRS 394.140 does not permit Executor Angela's appointment at all because she is not a Kentucky resident. He believes the latter clauses of KRS 394.140 strictly refer to "venue" and are therefore inapplicable. Clearly, those arguments are not based on Kentucky precedent, as multiple cases determined the appropriateness of ancillary administration using KRS 394.140 (or its equivalent predecessor), and permitted ancillary administration where, like here, the decedent is domiciled outside of Kentucky. *Id.*; *Bankemper v. Boone County Aviation, Inc.*,

-13-

435 S.W.2d 58 (Ky. 1968); *Stell v. Williams' Adm'r*, 233 Ky. 441, 443, 26 S.W.2d 8, 10 (1930).

Kentucky caselaw and statutes do indicate that domiciliary administration typically should be established prior to ancillary administration. *Payne*, 239 Ky. at 104, 39 S.W.2d at 208 ("The primary proof of a will . . . should be at the place where he had his domicile. . . . If he has property in other states or countries, it may be necessary to prove the will, or to take out ancillary administration there . . . without requiring the property to be followed into distant jurisdictions, where difficulties might be encountered."); *see* KRS 394.150 ("When a will of a nonresident has been proved out of the state, an authenticated copy and the certificate of probate may be offered for probate in this state.").

However, *Payne* clarifies that ancillary administration may properly take place prior to domiciliary administration "under peculiar circumstances rendering that course necessary for the immediate protection of rights, or the prevention of threatened loss, or the preservation of some interest." *Payne*, 239 Ky. at 105, 39 S.W.2d at 208. Here, Executor Angela argues that she took action in Jefferson County in order to protect the estate's rights and prevent the loss of estate assets. The verified complaint alleged that the accounts listed in the petition to open Decedent's estate included pension or other benefits to which Norma was entitled. Executor Angela claims it was entirely possible that those accounts could

-14-

be consumed during the estate administration process, which could render Decedent's estate unable to fulfill its obligations to Norma. Therefore, Executor Angela claims her ancillary appointment was necessary and appropriate in order to protect Norma's rights or prevent threatened loss of some interest. We agree.

While much of our caselaw interpreting this rule involves wrongful death claims for damages and intestate matters,[9] *Payne* clarifies that these principles also pertain to the probate of wills and other matters. 239 Ky. at 105, 39 S.W.2d at 208.[10] In *Payne*, the Court found that although the testatrix was not a resident of Kentucky, like here, the Kentucky court could properly probate her will in Kentucky even though "[i]t had not been proven or probated elsewhere." *Id.* at 101, 39 S.W.2d at 206. Ultimately, the Kentucky Court decided not to probate the will, not because it did not have the authority to do so, but because the property in dispute was no longer located in Kentucky: it had "been delivered to the Ohio administrator, where presumably they are available to the parties entitled thereto[.]" *Id.* at 106, 39 S.W.2d at 208. Therefore, the Court concluded, "no

---

[9] *See Service Lines, Inc. v. Mitchell*, 419 S.W.2d 525, 528 (Ky. 1967) (citing *Trotta's Adm'r v. Johnson, Briggs & Pitts*, 28 Ky. L. Rptr. 851, 121 Ky. 827, 831, 90 S.W. 540, 541 (1906) (Kentucky's highest court "approved the appointment of an Ancillary Administrator without the prior appointment and qualification of a primary administrator.")).

[10] To be clear, "such probate of a will . . . is merely ancillary. It is not for the purpose of establishing general rights of succession whether under a will or otherwise. The validity of wills and the right of succession generally are to be settled by the laws and determined by the courts of the state or country where the deceased person had his domicile." *Payne*, 239 Ky. at 104, 39 S.W.2d at 208 (citation omitted).

sufficient reasons appear for the probate of the holographic will here in advance of its probate at the domicile." *Id.* Importantly, that is not the situation here. Here, the disputed property – the alleged spousal benefits in Decedent's accounts – are still located in Jefferson County.

At this stage in the proceedings, there is no evidence to suggest – or any discussion below – that Executor Angela's claims are not of a "peculiar circumstance[] rendering [ancillary administration prior to domiciliary administration] necessary for the immediate protection of rights . . . ." 239 Ky. at 105, 39 S.W.2d at 208. Instead, the circuit court simply determined that Kentucky law does not allow ancillary administration before domiciliary administration. Such a conclusion is not supported by Kentucky caselaw.

Summarily, Kentucky law provides that ancillary administration may be implemented where a debt or demand is owed to the decedent, and it may precede domiciliary administration when necessary to preserve a claim or protected right. We find both components to be present here. Therefore, Executor Angela had standing to bring these claims against Decedent's estate and the motion to dismiss her claims on these grounds was improper.

**Actual Controversy**

Second, Executor Angela argues the circuit court improperly determined there was no actual controversy regarding her claims against the estate.

Administrator Howard argued the claims were not yet ripe because he had not collected the disputed assets and had only one asset for the Decedent: a $1,592.00 partial funeral reimbursement. Further, he stated on the probate court record that he would comply with the Agreement signed July 26, 2006, between Decedent and Norma.[11] However, in a motion to dismiss, it is the plaintiff's (here, Executor Angela's) allegations that we must accept as true. *Hardin v. Jefferson County Bd. of Educ.*, 558 S.W.3d 1, 5 (Ky. App. 2018).

A CR 12.02(f) motion should be granted if "it appears the pleading party would not be entitled to relief under any set of facts which could be proved in support of [her] claim." *Hardin*, 558 S.W.3d at 5 (quoting *James v. Wilson*, 95 S.W.3d 875, 883-84 (Ky. App. 2002)). We must accept the plaintiff's factual allegations as true, and all reasonable inferences must be drawn in her favor. *Id.* Thus, we are to accept the allegations Executor Angela made in her verified complaint and make all reasonable inferences in her favor.[12] We "must ask if the facts alleged in the complaint can be proved, would [Executor Angela] be entitled to relief?" *Id.*

---

[11] As discussed above, it is unclear whether Administrator Howard acknowledged that he would comply with the full Marriage Agreement or just the portion signed July 26, 2006.

[12] *See Spillman v. Beauchamp*, 362 S.W.2d 33, 34 (Ky. 1962) ("[I]n a 'Memorandum in Support of Defendants' Motion to Dismiss' filed in the circuit court the defendants set forth a statement of facts which they relied upon as exonerating them from liability or at the least creating issues of which the circuit court would not have jurisdiction. Apparently the circuit judge accepted this statement of facts in ruling on the motion to dismiss. In so doing he erred.").

In Executor Angela's verified complaint, she claims in pertinent part that the accounts listed on the petition to open Decedent's estate, or portions of them, contain pension or other benefits subject to the Marriage Agreement. She further contends that she received a letter from Minnesota Life acknowledging that payments were being made to the L&N Federal Credit Union account and requesting confirmation that Norma received her payments for spousal survivorship benefits from that account. She also claims the Prudential account holds a portion of Decedent's work pension.

These allegations, taken as true when construed in a light most favorable to Executor Angela, suggest that she could be entitled to relief. Despite the circuit court's reliance on Administrator Howard's promises that he has received only a partial funeral reimbursement and that he will adhere to the Marriage Agreement, we cannot consider such information in his favor at this stage. We are bound by the allegations in the verified complaint, and it does appear to describe an actual controversy.

Because the verified complaint alleges facts that, if true, could entitle Executor Angela to relief, and because she has standing under Kentucky law, we

-18-

believe her claims against Decedent's estate are justiciable in the Jefferson Circuit Court.  Therefore, the circuit court improperly dismissed those claims.[13]

Next, we must analyze Executor Angela's fraud claims against Administrator Howard.[14]  The circuit court dismissed those claims because it found (1) the Marriage Agreement waived such claims; (2) Executor Angela did not properly plead the fraud claim in the verified complaint; and (3) the claim became moot when Administrator Howard amended the death certificate.

First, we believe the circuit court's holding that the Marriage Agreement waived fraud claims of this nature is incorrect.[15]  Because the Marriage Agreement is a valid contract, it must be interpreted under traditional contract law. *See Ford v. Blue*, 106 S.W.3d 470, 473 (Ky. App. 2003).  Administrator Howard relied upon Section 2 of the Marriage Agreement, which stated that Norma and Decedent "waive, release and relinquish any and all claims and rights that either of them may have, or hereafter acquire as surviving spouse in the *Separate Property* of the other."  (Emphasis added.)

---

[13] We need not determine whether it was proper for the circuit court to dismiss these claims with prejudice because we find the dismissal to be improper as a whole.

[14] Unlike the claims against Decedent's estate, these were against Administrator Howard personally, not in his capacity as administrator of Decedent's estate.

[15] While Administrator Howard did not make this claim prior to this appeal, which is procedurally improper, the circuit court rendered findings involving this waiver, so we will review it. *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 734 (Ky. 2009) (citation omitted).

The Marriage Agreement described "Separate Property" as "individual assets as of the date of [the Marriage Agreement]" and stated that such items were identified on exhibits attached to and incorporated into the Marriage Agreement. When the Marriage Agreement is reviewed in relation to that description of "Separate Property," it is clear that the Marriage Agreement sought to affect only the parties' respective rights to the specific property listed. The Marriage Agreement is silent as to either party's waiver or release of claims involving anything other than "Separate Property," including potential fraud claims concerning a death certificate – which is neither an "individual asset" nor an item identified on the exhibits. *See Koszarek v. Minzner*, No. 2014-CA-001955-MR, 2017 WL 1102995, at *3 (Ky. App. Mar. 24, 2017); *Sadler v. Van Buskirk*, 478 S.W.3d 379, 384 (Ky. 2015). Therefore, neither Norma nor Executor Angela waived any claims other than those involving Decedent's "Separate Property."

Second, in dismissing these claims, the circuit court again relied upon information outside the verified complaint. The circuit court dismissed the claims because "any fraud caused no perceptible injury" and Administrator Howard claimed it "had been resolved by . . . amending the death certificate." However, as discussed, the circuit court must accept Executor Angela's allegations as true at this stage in the proceedings. While it may ultimately prove true that any fraud caused no injury, and that the claim is now moot, this was an improper

-20-

determination on a motion pursuant to CR 12.02. In the verified complaint, Executor Angela alleged that there <u>was</u> damage:

> [Administrator Howard] knowingly, intentionally and fraudulently submitted information that created errors on the Decedent's death certificate and those errors prevented [Norma] during her life and continue to prevent her estate from collecting assets that rightly belong to her. [Executor Angela] has been damaged by [Administrator Howard's] fraudulent and deceptive conduct in an amount to be determined by the Court.

Thus, at this stage of the proceedings, it is not clear whether Norma's estate has been denied assets that should have gone to her. If the statement of the attorney for Decedent is correct, there may be no injury, but that cannot be determined at this stage of litigation, or concluded on the basis of representations of counsel. Despite the potential that Executor Angela's fraud claim is moot, the circuit court failed to properly consider the verified complaint when analyzing the motion to dismiss. Therefore, we cannot affirm the circuit court's decision to dismiss the fraud claims for the reasons it provided in the opinion and order.

## IV. CONCLUSION

As to Executor Angela's ancillary appointment as administrator of Norma's estate, claims against Decedent's estate, and fraud claims against Administrator Howard, we hereby REVERSE the Jefferson Circuit Court order of dismissal under CR 12.02. These matters are hereby REMANDED to the circuit court to set aside the dismissal and allow the case to proceed on the merits.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Cornelius E. Coryell, II
Mary Elizabeth Anderson
Victoria Boland Fuller
Louisville, Kentucky

BRIEF FOR APPELLEE HOWARD
L. STIKES:

Daniel M. Oyler
Edward H. (Ted) Bartenstein
Louisville, Kentucky